IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS L. TAYLOR, III, solely in his capacity as Court-appointed temporary Receiver for Breitling Energy Corporation, *et al.* | § § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 3:19-cv-02602-D |
| SCHEEF & STONE, LLP, ROGER CRABB, and MITCH LITTLE, | § § § | |
| Defendants. | § § | |

---

BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS RECEIVER'S FIRST
AMENDED COMPLAINT

---

## TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ........................................................................................................... 1

RELEVANT ALLEGATIONS ....................................................................................... 3

ARGUMENT ................................................................................................................... 5

    I.    Legal Standard ................................................................................................ 5

    II.    Counts II and III fail as a matter of law .................................................. 6

        A.    The Receiver's claims for aiding and abetting fail because the Fifth Circuit does not recognize a cause of action for aiding and abetting under Texas law ..................................................................................... 7

        B.    Counts II and III violate the Texas anti-fracturing rule .......................... 8

        C.    The Receiver has failed to allege with particularity that Scheef & Stone participated in fraud ..................................................................... 10

    III.    Count I fails as a matter of law ................................................................. 11

        A.    Count I is barred by the statute of limitations ......................................... 11

        B.    Count I fails because the Receiver does not allege that Breitling was unaware its conduct was wrongful, or that Breitling would have altered its conduct based on different legal advice ........................... 17

        C.    As a matter of law, Breitling cannot hold Scheef & Stone liable for not "blowing the whistle" on Breitling's fraud ......................................... 18

    IV.    Count IV fails as a matter of law .............................................................. 19

        A.    The Receiver has failed to sufficiently plead a claim for actual fraudulent transfer ................................................................................. 19

        B.    The fraudulent transfer claim is barred by the TUFTA statute of repose .................................................................................................... 21

CONCLUSION .............................................................................................................. 24

CERTIFICATE OF SERVICE ..................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                     **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................5, 6

*Askanase v. Fatjo*,
    130 F.3d 657 (5th Cir. 1997) .........................................................................................12, 16

*Askanase v. Fatjo*,
    828 F. Supp. 465 (S.D. Tex. 1993), *aff'd*, 130 F.3d 657 (5th Cir. 1997) ...................13, 14, 16

*Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*,
    3:17-CV-1147-D, 2018 WL 2100041 (N.D. Tex. May 7, 2018) (unpublished) .....................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................5, 6, 21

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
    343 F.3d 719 (5th Cir. 2003) .................................................................................................6

*Centeq Realty, Inc. v. Siegler*,
    899 S.W.2d 195 (Tex.1995) .................................................................................................17

*CTS Corp. v. Waldburger*,
    573 U.S. 1 (2014) .................................................................................................................22

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
    888 F.3d 753 (5th Cir. 2018) ............................................................................................7, 8

*Duerr v. Brown*,
    262 S.W.3d 63 (Tex. App.-Houston [14th Dist.] 2008, no pet.) ...............................................8

*Erikson v. Renda*,
    --- S.W.3d -----, 2019 WL 6972233 (Tex. Dec. 20, 2019) ....................................................12

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*,
    51 S.W.3d 573 (Tex. 2001) ..................................................................................................11

*F.D.I.C. v. Shrader & York*,
    991 F.2d 216 (5th Cir. 1993) ...............................................................................................15

*FDIC v. Ernst & Young*,
    967 F.2d 166 (5th Cir. 1992) .............................................................................13, 14, 18, 19

*First United Pentecostal Church of Beaumont v. Parker*,
    514 S.W.3d 214 (Tex. 2017) ..................................................................................................7

*Ford Motor Co. v. Ledesma,*
    242 S.W.3d 32 (Tex. 2007)..................................................................................17

*Garcia v. Vasilia,*
    CV H-17-1601, 2019 WL 4105559 (S.D. Tex. Aug. 29, 2019) (unpublished) ........7

*Goffney v. Rabson,*
    56 S.W.3d 186 (Tex. App.–Houston [14th Dist.] 2001, pet. denied) ......................9

*Greenstein, Logan & Co. v. Burgess Mktg., Inc.,*
    744 S.W.2d 170 (Tex. App.—Waco 1987, writ denied) ......................................14

*Huerta v. Shein,*
    498 F. App'x 422 (5th Cir. 2012) (unpublished) ..................................................8

*Janvey v. Democratic Senatorial Campaign Comm., Inc.,*
    712 F.3d 185 (5th Cir. 2013) ...............................................................16, 18, 22

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P.,*
    546 S.W.3d 648 (Tex. 2018), *reh'g denied* (June 15, 2018) ..................................11

*In re Life Partners Holdings, Inc.,*
    926 F.3d 103 (5th Cir. 2019) .........................................................................10, 19

*Lovelace v. Software Spectrum Inc.,*
    78 F.3d 1015 (5th Cir. 1996) ................................................................................6

*Lundy v. Masson,*
    260 S.W.3d 482 (Tex. Ct. App. 2008, pet. denied) .............................................13

*Methodist Healthcare Sys. of San Antonio, Ltd. v. Rankin,*
    307 S.W.3d 283 (Tex. 2010)................................................................................22

*Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.,*
    --- F. App'x ----, 2019 WL 6834031 (5th Cir. Dec. 13, 2019) (unpublished) ..........7

*Nathan v. Whittington,*
    408 S.W.3d 870 (Tex. 2013)................................................................................21

*Official Stanford Inv'rs Comm. v. Greenberg Traurig, LLP,*
    3:12-CV-4641-N, 2014 WL 12572881 (N.D. Tex. Dec. 17, 2014)
    (unpublished) .......................................................................................................9

*Reneker v. Offill,*
    3:08-CV-1394-D, 2009 WL 3365616 (N.D. Tex. Oct. 20, 2009) (unpublished) ..........9, 17, 18

*Reneker v. Offill,*
    3:08-CV-1394-D, 2012 WL 2158733 (N.D. Tex. June 14, 2012) (unpublished).............13, 23

*Rogers v. McDorman*,
     521 F.3d 381 (5th Cir. 2008) ......................................................................14

*Roland v. United States*,
     838 F.2d 1400 (5th Cir. 1988) ....................................................................20

*In re Soza*,
     542 F.3d 1060 (5th Cir. 2008) ....................................................................20

*Starwood Mgmt., LLC ex rel. Gonzalez v. Swaim*,
     530 S.W.3d 673 (Tex. 2017)........................................................................17

*Taylor v. Books A Million, Inc.*,
     296 F.3d 376 (5th Cir. 2002) ........................................................................6

*Taylor v. Rothstein Kass & Co.*,
     3:19-CV-1594-D, 2020 WL 554583 (N.D. Tex. Feb. 4, 2020) (unpublished)............... *passim*

*Won Pak v. Harris*,
     313 S.W.3d 454 (Tex. App.—Dallas 2010, pet. denied)..................................................8, 9, 11

**Statutes**

Tex. Bus. & Com. Code § 24.005(b) ..........................................................21

Tex. Bus. & Com. Code § 24.010(a)(1)......................................................21

Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a)........................................11

**Other Authorities**

5 Wright & Miller, *Federal Practice & Procedure* § 1216 (3d ed. 2004) ....................................6

Defendants Scheef & Stone, LLP, Roger Crabb, and Mitch Little (together, "Scheef & Stone" or "Defendants"), through undersigned counsel, hereby file this brief in support of their motion dismiss the Receiver's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

## INTRODUCTION

The Receiver's First Amended Complaint seeks damages for alleged professional negligence arising from Scheef & Stone's representation of Breitling Oil & Gas Corporation ("BOG"), Breitling Royalties Corporation ("BRC"), Breitling Energy Corporation ("BECC"), Crude Energy, LLC ("Crude Energy"), and Crude Royalties, LLC ("Crude Royalties") (together, "Breitling" or the "Breitling entities"). This case must be dismissed because (i) it seeks to recover under causes of action and legal theories that fail as a matter of law and are not recognized by Texas law, (ii) it attempts to bring claims that are time-barred by the applicable limitations, and (iii) it is not properly pled under the Rule 9(b) standard.

In 2016, the U.S. Securities and Exchange Commission (the "SEC") brought suit against the Breitling entities, former Breitling CEO and controlling shareholder Christopher Faulkner ("Faulkner"), and various other associated persons in *SEC v. Faulkner*, No. 3:16-cv-01735-D (N.D. Tex. June 24, 2016) ("*SEC v. Faulkner*" or the "Enforcement Action"). The SEC alleged that, since 2011, Faulkner and his co-defendants had conducted a scheme to defraud investors in oil and gas interests owned by the Breitling entities. *See SEC v. Faulkner*, Complaint (Dkt. No. 1).

On August 14, 2017, this Court appointed Plaintiff Thomas L. Taylor, III (the "Receiver" or "Mr. Taylor") as temporary receiver over the oil and gas-related assets of Faulkner and Breitling. *SEC v. Faulkner*, August 14, 2017 Order Appointing Temporary Receiver (the "August 2017 Order") (Dkt. No. 108). Approximately a month later, the Court entered another order

appointing Mr. Taylor as the receiver over all the Breitling assets. *SEC v. Faulkner*, September 25, 2017 Order Appointing Receiver (the "September 2017 Order") (Dkt. No. 142).

Nearly two years later, the Receiver sought leave to bring the present suit against Scheef & Stone, Breitling's former legal counsel for certain securities-related matters. The Receiver brings four counts against the law firm: (I) "Negligence/Gross Negligence," (II) "Participation in Breach of Fiduciary Duties," (III) "Aiding, Abetting, or Participation in Faulkner's Fraudulent Scheme," and (IV) "Avoidance of Fraudulent Transfers." Receiver's First Amended Complaint (Dkt. 7), ¶¶ 134-148 ("First Am. Complaint").

Scheef & Stone moves to dismiss each count because the Receiver has failed to state a claim upon which relief can be granted. First, Counts II and III should be dismissed for three reasons: (1) Texas law does not recognize a claim for aiding and abetting, (2) both counts violate Texas's anti-fracturing rule, and (3) the Receiver has failed to allege, with the necessary specificity, that Scheef & Stone participated in fraud.

Next, Count I should be dismissed for three reasons: (1) it is time-barred; (2) the Receiver fails to plead breach of duty or causation because there is no allegation that Breitling was unaware its actions were wrongful or illegal, or that Breitling would have followed different legal advice if Scheef & Stone had given it; and (3) Scheef & Stone cannot be held liable for not "blowing the whistle" on the alleged fraud.

Finally, Count IV should be dismissed because the fraudulent-transfer claims described therein have not been properly pled under Rule 9(b), and because the Receiver's fraudulent-transfer claims have been extinguished by the statute of repose (which was not tolled by the Court's orders appointing the Receiver and tolling only statutes of *limitations*).

## RELEVANT ALLEGATIONS

The First Amended Complaint alleges that Faulkner, through the Breitling entities "under his control," quarterbacked the raising of approximately $150 million from investors in oil and gas-related securities offered by the Breitling entities. (First Am. Complaint, ¶ 2). Faulkner and others at Breitling allegedly engaged in various fraudulent and wrongful activities in the course of these efforts, including inflating the drilling costs reported to investors (First Am. Complaint, ¶¶ 18-19), selling interests that Breitling did not own (First Am. Complaint, ¶ 20), commingling and misappropriating investor funds for both company purposes and Faulkner's personal use (First Am. Complaint, ¶¶ 21-22), misrepresenting the intertwined relationships between the Breitling entities (First Am. Complaint, ¶¶ 26-33), offering unlicensed securities via unregistered persons and through unlawful methods, such as "cold-calling" (First Am. Complaint, ¶¶ 58, 61, 100), misrepresenting the quality of the interests being sold (First Am. Complaint, ¶¶ 76, 119), and unlawfully paying commissions to Breitling officers and staff (First Am. Complaint, ¶¶ 83, 109).

Scheef & Stone is alleged to have served as Breitling's "primary outside counsel" beginning in April 2010. (First Am. Complaint, ¶ 3). In that capacity, Scheef & Stone is alleged to have warned Faulkner and others that Breitling's actions were putting the company at risk of liability. (First Am. Complaint, ¶¶ 44, 58, 71, 76, 83, 94, 98, 100, 107, 109). However, the Receiver alleges that Scheef & Stone's efforts were inconsistent and insufficient, resulting in the SEC's Enforcement Action to "shut down Breitling in 2016." (First Am. Complaint, ¶ 49). As alleged by the Receiver, the last negligent act by Scheef & Stone in representing Breitling was to not follow up on notice of a lawsuit against Breitling in June 2015. (First Am. Complaint, ¶ 118).

The Receiver alleges that Scheef & Stone gave overly aggressive legal compliance advice and also either failed to investigate and learn of Breitling's fraudulent activities or, having learned

3

of them, failed to act sufficiently on them. (First Am. Complaint, ¶¶ 119-126). Specifically, Scheef & Stone is alleged to have failed to insist that Breitling disclose various compliance problems and investor and regulator complaints, and to have failed to "report up" or make a noisy withdrawal from representing Breitling. (First Am. Complaint, ¶¶ 123-126).

In an attempt to link Scheef & Stone's conduct to any harm to the client, the Receiver alleges that, if Scheef & Stone had "demanded" that Breitling comply with the securities laws and disclose its prior alleged violations, the result would have been to "reveal[] Faulkner's fraudulent scheme many years earlier, saving Breitling tens of millions of dollars in losses and increased liabilities…." (First Am. Complaint, ¶ 129). The Receiver notably does not allege that Breitling was unaware its activities were fraudulent and illegal, or that Breitling would have heeded more stringent compliance advice. Nor does the Receiver allege that Scheef & Stone made any misrepresentations to Breitling. (First Am. Complaint, *passim*).

The Receiver's First Amended Complaint contains four "counts" against Scheef & Stone. In Count I, the Receiver alleges negligence and gross negligence. (First Am. Complaint, ¶ 135).

In Count II, titled "Participation in Breach of Fiduciary Duties," the Receiver alleges that Scheef & Stone knew Faulkner owed and was breaching fiduciary duties to Breitling, and that Scheef & Stone "knew they were aiding, abetting, or participating in these breaches of fiduciary duties by the conduct alleged herein." (First Am. Complaint, ¶¶ 137-138).

In Count III, titled "Aiding, Abetting, or Participation in Faulkner's Fraudulent Scheme," the Receiver alleges that Scheef & Stone "aided, abetted, and/or participated with Faulkner in the fraudulent scheme carried out by him through Breitling" because Scheef & Stone's "services… enabled Faulkner to fraudulently offer securities to public investors" and misappropriate funds, making Scheef & Stone "directly liable for fraud…." (First Am. Complaint, ¶ 141).

4

Count IV is a claim for fraudulent transfer based on payments from Breitling to Scheef & Stone for legal services between December 1, 2013 and April 1, 2014. (First Am. Complaint, ¶ 143). The Receiver alleges that Faulkner made these payments "with actual intent to hinder, delay, or defraud creditors," and that "Faulkner engaged Scheef & Stone in order to continue, and expand upon, his fraudulent scheme." (First Am. Complaint, ¶ 144).

The Receiver also pleaded affirmative allegations regarding limitations. He asserts that he "did not discover and could not with the exercise of reasonable diligence have discovered until more recently, Defendants' negligence and participation in Faulkner's and others' breaches of fiduciary duties and the Breitling fraudulent scheme and the true nature of the injury suffered," that "Defendants' wrongful acts were inherently undiscoverable," that he may rely on "the doctrine of equitable tolling and adverse domination," and that "the Breitling Entities were not able to bring the causes of action asserted herein until they were 'freed of [Faulkner's] coercion by the court's appointment of [the] [R]eceiver.'" (First Am. Complaint, ¶ 132). The Receiver also points to provisions of the August 2017 and September 2017 Orders in the Enforcement Action stating that limitations are tolled. (First Am. Complaint, ¶¶ 130-131).

## ARGUMENT

### I.   Legal Standard.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.'" *Id.* (*quoting Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (*quoting Twombly*, 550 U.S. at 557) (alteration in original). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted) (citing 5 Wright & Miller, *Federal Practice & Procedure* § 1216 (3d ed. 2004)).

A dismissal for failure to plead fraud with particularity pursuant to Fed. R. Civ. P. 9(b) is treated the same as a Fed. R. Civ. P. 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)). Rule 9(b) contains a heightened pleading standard that "requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

A statute of limitations defense supports dismissal under Rule 12(b)(6) when it is evident from the plaintiff's pleadings that the action is barred, and the pleadings fail to raise some basis for tolling or the like. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002).

## II.   <u>Counts II and III fail as a matter of law.</u>

Counts II and III appear to combine multiple theories of recovery. In Count II, titled "Participation in Breach of Fiduciary Duties," the Receiver alleges that the Breitling principals (particularly Faulkner) owed and breached fiduciary duties, that Scheef & Stone knew Faulkner owed and was breaching those duties, and that Scheef & Stone "knew they were aiding, abetting, or participating in these breaches of fiduciary duties…." (First Am. Complaint, ¶¶ 137-138). In Count III, titled "Aiding, Abetting, or Participation in Faulkner's Fraudulent Scheme," the Receiver alleges that Scheef & Stone "aided, abetted, and/or participated with Faulkner in the fraudulent scheme carried out by him through Breitling." (First Am. Complaint, ¶ 141). The allegations do not make clear which of several potential theories the Receiver is asserting.

In any event, Counts II and III should be dismissed because (1) Texas law does not recognize a cause of action for aiding and abetting, (2) the claims are fundamentally legal malpractice claims and violate the anti-fracturing rule, and (3) to the extent the Receiver alleges fraud, he has failed to plead particular facts sufficient to allege Scheef & Stone's participation.

### A. The Receiver's claims for aiding and abetting fail because the Fifth Circuit does not recognize a cause of action for aiding and abetting under Texas law.

The Texas Supreme Court "has not expressly decided whether Texas recognizes a cause of action for aiding and abetting." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017). As a result, the Fifth Circuit has held that "no such claim exists in Texas" and has declined to "fashion[] novel causes of action not yet recognized by the state courts." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781, 782 (5th Cir. 2018).

The Fifth Circuit recently reaffirmed its decision in *DePuy* not to recognize a distinct claim for aiding and abetting. *See Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, --- F. App'x ----, 18-10755, 2019 WL 6834031, at *7 (5th Cir. Dec. 13, 2019) (unpublished). Similarly, this Court recently dismissed an aiding-and-abetting claim brought by the current Receiver against Breitling's auditor in a related case arising out of the Enforcement Action against Breitling. *See Taylor v. Rothstein Kass & Co.*, 3:19-CV-1594-D, 2020 WL 554583, at *5 (N.D. Tex. Feb. 4, 2020) (unpublished) (dismissing pursuant to Rule 12(b)(6) the Receiver's claim for aiding and abetting breach of fiduciary duty). The Southern District of Texas has also followed suit. *See Garcia v. Vasilia*, CV H-17-1601, 2019 WL 4105559, at *11 (S.D. Tex. Aug. 29, 2019) (unpublished) (dismissing on summary judgment a claim for aiding and abetting fraud "because no such claim has been expressly recognized by the State of Texas").

7

Based on *DePuy*, the Receiver's claims in Counts II and III must be dismissed to the extent they allege Scheef & Stone are liable under an aiding-and-abetting theory.

### B.    Counts II and III violate the Texas anti-fracturing rule.

"The anti-fracturing rule prevents plaintiffs from converting what are actually professional negligence claims against an attorney into other claims such as fraud, breach of contract, breach of fiduciary duty," or the like. *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied). The rule applies if "the gravamen of [the plaintiff's] complaints" is "focus[ed] on the quality or adequacy of the attorney's representation." *Id.* "Merely characterizing conduct as a 'misrepresentation' or 'conflict of interest' does not necessarily transform what is really a professional negligence claim into a fraud or breach of fiduciary duty claim." *Id.* To avoid application of the anti-fracturing rule, "the plaintiff must do more than merely reassert the same claim for legal malpractice under an alternative label. The plaintiff must present a claim that goes beyond what traditionally has been characterized as legal malpractice." *Huerta v. Shein*, 498 F. App'x 422, 427 (5th Cir. 2012) (unpublished) (quoting *Duerr v. Brown*, 262 S.W.3d 63, 70 (Tex. App.-Houston [14th Dist.] 2008, no pet.)).

The Receiver's allegations fail to go beyond merely alleging legal malpractice against Scheef & Stone. Specifically, the Receiver alleges that Scheef & Stone:

(a) either did not learn or did not act upon information about Breitling's activities that ultimately led to the SEC's investigation of Breitling and the filing of the Enforcement Action (First Am. Complaint, ¶¶ 119-120, 122);

(b) did not advise Breitling that it could not sell its securities under the Reg D exemption to SEC registration rules and gave poor legal advice based on the enactment of the federal JOBS Act (First Am. Complaint, ¶ 121);

8

(c) did not "engage in further inquiry or due diligence" regarding the investor and regulatory complaints against Breitling (First Am. Complaint, ¶¶ 123-125); and

(d) did not demand that Breitling disclose its various investor and regulatory complaints to investors. (First Am. Complaint, ¶ 126).

All of these allegations are "focused on the quality or adequacy" of Scheef & Stone's representation of Breitling. *See Won Pak*, 313 S.W.3d at 457. Indeed, it is telling that the Receiver alleges numerous times that Scheef & Stone "should have known" or "should have been aware" of information that "should have been discovered...." (First Am. Complaint, ¶¶ 119, 120, 121, 124, 125). And nowhere does the Receiver allege the kinds of facts that state independent causes of action against attorneys, such as conflicts of interest or "self-dealing, deception, or misrepresentations" directed at the client. *See Official Stanford Inv'rs Comm. v. Greenberg Traurig, LLP*, 3:12-CV-4641-N, 2014 WL 12572881, at *7 (N.D. Tex. Dec. 17, 2014) (unpublished) (quoting *Goffney v. Rabson*, 56 S.W.3d 186, 194 (Tex. App.–Houston [14th Dist.] 2001, pet. denied)). Rather, the Receiver relies on the same alleged conduct and seeks the same damages for all his claims. (First Am. Complaint, ¶¶ 135, 137-38, 141).

This Court previously dismissed a breach of fiduciary duty claim against a law firm as an improperly fractured claim for negligence based on similar allegations. *See Reneker v. Offill* ("*Reneker I*"), 3:08-CV-1394-D, 2009 WL 3365616, at *9-10 (N.D. Tex. Oct. 20, 2009) (unpublished) (allegations that law firm failed to adequately advise its client that the client was violating the law, and that the client should cease illegally offering securities to the public, constituted only a claim for professional negligence).

9

Simply put, the Receiver's complaint lies in the quality and adequacy of the legal services provided by Scheef & Stone and nothing more. Accordingly, Counts II and III are improperly fractured negligence claims and should be dismissed on that basis.[1]

### C. The Receiver has failed to allege with particularity that Scheef & Stone participated in fraud.

Allegations of fraud or mistake subject to Rule 9(b) must meet heightened pleading standards, including "the who, what, when, where, and why as to the fraudulent conduct." *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019). This Court recently held in *Taylor* that Texas law does not recognize a cause of action for participation in fraud separately from a direct claim for fraud or conspiracy and thus, to establish joint liability for fraud by participation, the claimant must plead that the defendant itself engaged in fraud. *Taylor*, 2020 WL 554583, at *9 (holding the receiver's "allegations of *Faulkner's* fraudulent actions are insufficient to hold Rothstein Kass liable for fraud absent specific allegations of *Rothstein Kass's* fraudulent intent and conduct"). Accordingly, the Receiver must establish the Rule 9(b) requirements directly as to Scheef & Stone, and not merely as an alleged joint participant with Breitling. *Id.*

Here, the Receiver alleges that Scheef & Stone is "directly liable for fraud" based on his claim that Scheef & Stone's "services assisted the fraudulent scheme that enabled Faulkner to fraudulently offer securities to public investors" and misappropriate funds from the Breitling entities. (First Am. Complaint, ¶ 141). But those allegations are insufficient to plead fraud.

The Receiver's allegations are that Scheef & Stone *failed* to learn or act on information, *failed* to advise Breitling to stop selling securities, *failed* to properly investigate the investor and

---

[1] This Court's decision in *Taylor* is not to the contrary. The auditor in that case was alleged to have publicly issued an unqualified audit report despite knowledge of falsities in the report. *See Taylor*, 2020 WL 554583, at *7. By contrast, the gravamen of the Receiver's claims against Scheef & Stone is the alleged failure to give legal advice to Breitling to cease its fraudulent conduct, not affirmative misleading statements to the public on Breitling's behalf.

regulatory complaints made against Breitling, and *failed* to insist that Breitling disclose those complaints publicly. (First Am. Complaint, ¶¶ 119-126). Those are not allegations of fraud. *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P.*, 546 S.W.3d 648, 653 (Tex. 2018), *reh'g denied* (June 15, 2018) (quoting *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)) (setting forth elements of fraud, including that defendant "made a material representation that was false" and "intended to induce the plaintiff to act upon the representation"). Nowhere does the Receiver allege that Scheef & Stone made any misrepresentations *to Breitling* with the intent to induce *Breitling* to act. (First Am. Complaint, *passim*). *See Taylor*, 2020 WL 554583, at *9 (holding that receiver's failure to plead elements of fraud directly against auditing firm, including which representations were material, false, and made with fraudulent intent to induce reliance, failed to meet the Rule 9(b)).

Thus, the Receiver has failed to plead the essential elements of fraud, so Counts II and III must be dismissed to the extent they assert claims for fraud.

### III.    Count I fails as a matter of law.

Count I alleges that Scheef & Stone is liable for negligence and gross negligence. (First Am. Complaint, ¶¶ 134-135). That claim fails as a matter of law for three reasons: (1) the Receiver's allegations show that the claim is time-barred, (2) the Receiver does not allege that Breitling was unaware its actions were wrongful, or that Breitling would have changed course with different legal advice; and (3) the Receiver cannot rely on an alleged duty of Scheef & Stone to "blow the whistle" or on speculation about would have happened if Scheef & Stone had done so.

#### A.    Count I is barred by the statute of limitations.

A suit for professional negligence must be brought no later than two years from the date the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *see also Won Pak*, 313 S.W.3d at 459. In professional negligence cases, the cause of action accrues "when faulty

11

professional advice is taken." *Erikson v. Renda*, --- S.W.3d -----, 18-0486, 2019 WL 6972233, at *4 (Tex. Dec. 20, 2019).

The Receiver's last specific factual allegation of negligence—the alleged disregard of notice of a lawsuit against Breitling—is dated June 2015. (First Am. Complaint, ¶ 118). Therefore, June 2015 is the latest the statute of limitations could have begun running. Accordingly, although the August 2017 and September 2017 Orders in the Enforcement Action state that limitations are tolled, the two-year limitations period for any negligence claim against Scheef & Stone expired in June 2017, before those orders were entered. (First Am. Complaint, ¶¶ 130-131).[2]

The Receiver makes several (conclusory) statements about why limitations should be tolled. He asserts that he "did not discover and could not with the exercise of reasonable diligence have discovered until more recently, Defendants' negligence and participation in Faulkner's and others' breaches of fiduciary duties and the Breitling fraudulent scheme and the true nature of the injury suffered," and that "Defendants' wrongful acts were inherently undiscoverable." (First Am. Complaint, ¶ 132). In effect, he argues that the discovery rule tolls the limitations period. The discovery rule "defer[s]" the accrual of a claim for legal malpractice "until the client discovers, or should discover, the wrongful act and injury." *Erikson*, 2019 WL 6972233, at *4.

Here, the allegations against Scheef & Stone essentially boil down to a claim that Scheef & Stone did not advise (or did not advise strongly enough) Breitling's officers and employees that they were engaging in allegedly fraudulent and unlawful activities. Yet the First Amended

---

[2] Although the Receiver alleges that Scheef & Stone continued to represent Breitling through October 2016 (First Am. Complaint, ¶ 118), the allegations after June 2015 do not assert anything other than that Scheef & Stone's representation was ongoing. (First Am. Complaint, ¶¶ 2-4, 14, 28, 36, 49, 115, 126). The mere fact of ongoing representation by the allegedly negligent attorney, without more, does not affect the statute of limitations in a legal malpractice case. *See, e.g.*, *Askanase v. Fatjo* ("*Askanase II*"), 130 F.3d 657, 669 (5th Cir. 1997) (rejecting the continuous representation doctrine as contrary to Texas law); *Erikson*, 2019 WL 6972233, at *8 (holding that tolling of limitations for legal malpractice during ongoing representation does not apply to "transactional work" of the type alleged here).

Complaint is replete with allegations that Breitling already knew, through its officers and employees, that it was engaging in fraudulent and wrongful conduct, including by inflating cost estimates (First Am. Complaint, ¶¶ 18-19), selling working interests it did not own (First Am. Complaint, ¶ 20), commingling and misappropriating investor funds (First Am. Complaint, ¶¶ 21-22), misrepresenting the relationships between the Breitling entities (First Am. Complaint, ¶¶ 26-33), making unlawful solicitations for the sale of securities (First Am. Complaint, ¶¶ 58, 61, 100), making misrepresentations in the course of those sales (First Am. Complaint, ¶¶ 76, 119), and unlawfully paying sales commissions to unlicensed persons (First Am. Complaint, ¶¶ 83, 109).

Breitling's knowledge that it was engaging in wrongful conduct defeats the Receiver's claim that he may rely on the discovery rule to toll the limitations period. Indeed, at several points, the Receiver alleges that Scheef & Stone actually did inform Breitling (through Faulkner and others) of these problems. (First Am. Complaint, ¶¶ 44, 58, 71, 76, 83, 94, 98, 100, 107, 109).

Because "[a] corporation can act and acquire knowledge only through its agents," the knowledge of the corporation's officers and directors is generally "imputed to the corporation itself." *Reneker v. Offill* ("*Reneker II*"), 3:08-CV-1394-D, 2012 WL 2158733, at *10 (N.D. Tex. June 14, 2012) (unpublished) (quoting *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. Ct. App. 2008, pet. denied)). That is true even in cases of fraud by a corporate officer if "the fraud was on behalf of the corporation" as opposed to "against it." *Id.* at *11 (quoting *FDIC v. Ernst & Young*, 967 F.2d 166, 171 (5th Cir. 1992)).

In other words, "imputation turns on whether the agent was acting for or against the principal's interests…." *Askanase v. Fatjo* ("*Askanase I*"), 828 F. Supp. 465, 470 (S.D. Tex. 1993), *aff'd*, 130 F.3d 657 (5th Cir. 1997). Although "[a]n agent's knowledge is not imputed to his principal if he acts entirely for his own or another's purposes," such knowledge is imputed "in a

case of joint interests"—even if "the agent's primary interest is inimical to that of his principal." *Id.* at 470-71.

As the Fifth Circuit explained in *Ernst & Young*,

Fraud on behalf of a corporation is not the same thing as fraud against it. Fraud against the corporation usually hurts just the corporation; the *stockholders* are the principal if not only victims….But the stockholders of a corporation whose officers commit fraud for the benefit of the corporation are *beneficiaries* of the fraud….[T]he primary costs of a fraud on the corporation's behalf are borne not by the stockholders but by outsiders to the corporation….

*Ernst & Young*, 967 F.2d at 171 (quoting *Greenstein, Logan & Co. v. Burgess Mktg., Inc.*, 744 S.W.2d 170, 190–91 (Tex. App.—Waco 1987, writ denied)) (emphasis added).

*Ernst & Young* involved claims by the FDIC, as receiver for a failed savings and loan association, against the S&L's auditor. The S&L's sole owner was alleged to have "pursue[d] complex commercial ventures" to "generate[] paper profits" and create the appearance of solvency, "made false entries in [the S&L's] books," and "conspired to misapply [the S&L's] funds" as "part of a scheme…to defraud [the S&L's] depositors and creditors." *Id.* at 168.

The Fifth Circuit held that the owner's knowledge was imputable to the S&L (and, by extension, the FDIC as receiver) because the owner was the "sole owner" and his "fraudulent activities on [the S&L's] behalf benefitted himself and injured outsiders to [the S&L]—i.e. depositors and creditors." *Id.* at 171; *see also Rogers v. McDorman*, 521 F.3d 381, 395 (5th Cir. 2008) (holding that fraudulent activities to "keep[] and grow[]" a client's business did not constitute "acting adversely simply because the scheme eventually hurt [the company]").

Similarly, the First Amended Complaint alleges numerous actions taken by Faulkner that benefitted Breitling, most notably raising approximately $150 million from investors. (First Am. Complaint, ¶ 2). Alleged misdeeds by Faulkner and other Breitling officers and employees—from the use of unlicensed persons to sell securities via cold-calling, to the payment of commissions to

such persons, to the preparation of fraudulent and misleading sales materials—were undertaken in furtherance of raising those funds. (First Am. Complaint, ¶¶ 4, 16, 18, 83).

And although Faulkner's alleged actions also involved benefits to himself personally (in the form of paying himself a minority of the funds raised), his joint interests (for himself personally and for Breitling) do not prevent his knowledge from being imputed to Breitling. (First Am. Complaint, ¶ 2). Nor does the fact that these actions allegedly ultimately harmed Breitling and led the SEC to "shut down Breitling in 2016." (First Am. Complaint, ¶ 49). Because Faulkner and others are alleged to have carried out fraudulent activities on Breitling's behalf (rather than against Breitling's interests), their knowledge is imputable to Breitling. Again, Breitling's knowledge that it was engaging in fraudulent and wrongful conduct precludes the Receiver's claim to rely on the discovery rule to toll the limitations period. Consequently, the statute of limitations is not tolled.[3]

The Receiver also "asserts the doctrine of equitable tolling and adverse domination" as basis for avoiding the statute of limitations. (First Am. Complaint, ¶ 132). The Receiver does not elaborate on what exactly he means by "equitable tolling," but this appears to be a re-assertion of the discovery rule, which does not apply in this case for the reasons described above. Nor does the adverse domination doctrine apply here. Adverse domination is a "very narrow doctrine" that "applie[s] to suits by a corporation *against the officers or directors of that company*" and "tolls the statute of limitations for claims *against wrongdoing officers and directors of a corporation* until they relinquish control of the institution." *F.D.I.C. v. Shrader & York*, 991 F.2d 216, 227 (5th Cir. 1993) (emphasis added). Here, the Receiver alleges only that Scheef & Stone was Breitling's "primary outside counsel," not that the firm or any of its attorneys were officers or directors of any

---

[3] Furthermore, if the Court concludes that some portions of Faulkner's conduct benefitted Breitling but not others, the Receiver's claim should still be dismissed to the extent it relies on portions of Faulkner's conduct (or the conduct of other Breitling officers and employees) that benefitted Breitling.

Breitling entity. (First Am. Complaint, ¶ 3). Moreover, adverse domination applies only to claims for "intentional misconduct," not "mere negligence" or even "gross negligence." *See Askanase II*, 130 F.3d at 666-67. Accordingly, adverse domination does not apply.

Finally, the Receiver claims "the Breitling Entities were not able to bring the causes of action asserted herein until they were 'freed of [Faulkner's] coercion by the court's appointment of [the] [R]eceiver.'" (First Am. Complaint, ¶ 132) (quoting *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 190 (5th Cir. 2013)). But *Janvey* is distinguishable from this case. *Janvey* stands for the principle that "the knowledge and effects of the fraud of *the principal of a Ponzi scheme* in making fraudulent conveyances of the funds of the corporations under his evil coercion are not imputed to his captive corporations" prior to the appointment of a receiver. *Janvey*, 712 F.3d at 190 (emphasis added).

Neither the Receiver nor the SEC has alleged that Breitling was a Ponzi scheme or that Faulkner perpetrated a Ponzi scheme. Rather, the Receiver alleges that Faulkner benefitted Breitling by raising approximately $150 million for the various Breitling entities. (First Am. Complaint, ¶ 2). Accordingly, *Janvey* is inapplicable here, and Faulkner's knowledge is imputed to Breitling. Therefore, the statute of limitations has not been tolled and bars the Receiver's negligence and gross negligence claims.[4]

---

[4] This Court's decision in *Taylor* is likewise distinguishable on this point. *Taylor* held that Faulkner's knowledge could not be imputed to Breitling because "[c]ourts have refused to impute the knowledge of principals to controlled entities where the officers 'allegedly filled their own pockets while fraudulently extending the life of the institution they continued to milk' and where they 'systematically looted [the company] of its most profitable and least risky businesses as well as millions of dollars in income[.]'" *Taylor*, 2020 WL 554583, at *3 (quoting *Askanase I*, 828 F. Supp. 465, 471 (S.D. Tex. 1993)). But the Receiver has made no allegations in this case regarding Breitling's solvency and has not relied on a "deepening insolvency" theory in bringing claims against Scheef & Stone. Indeed, the Receiver has not even alleged that Scheef & Stone knew or should have known that Faulkner was misappropriating funds from Breitling. (First Am. Complaint, *passim*).

**B.      Count I fails because the Receiver does not allege that Breitling was unaware its conduct was wrongful, or that Breitling would have altered its conduct based on different legal advice.**

"The threshold inquiry in a negligence case is whether the defendant owes a legal duty to the plaintiff." *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995). "The existence of duty is a question of law for the court to decide…." *Id.* Likewise, proximate cause is an essential element of a legal malpractice claim. *Starwood Mgmt., LLC ex rel. Gonzalez v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017). To plead proximate cause, a plaintiff must plead facts showing that the defendant's conduct was "a substantial factor in bringing about an injury, and without which the injury would not have occurred…." *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007).

The First Amended Complaint is full of allegations that the Breitling principals were knowingly and intentionally engaged in fraudulent, illegal, and otherwise wrongful activities. Although the Receiver asserts that Scheef & Stone did not properly advise Breitling regarding its activities, nowhere in the First Amended Complaint does the Receiver allege that Breitling was unaware of the fraudulent and illegal nature of its activities. Nor does the Receiver allege that, if Scheef & Stone had provided different legal advice, Breitling would have heeded that advice and thereby somehow avoided suffering damages. (First Am. Complaint, *passim*).

As this Court reasoned in a similar case involving malpractice claims against a law firm representing a client accused of securities fraud, if Breitling and its principals "knew they were committing—indeed, fully intended to commit—fraud, it is not apparent how [Scheef & Stone's] failure to tell them what they already knew could be a negligent breach of a lawyer's duty to the client." *See Reneker I*, 2009 WL 3365616, at *5. Similarly, mere speculation that different legal advice would have resulted in different client behavior is insufficient to plead causation. *See id.* at *6. Accordingly, the Receiver's First Amended Complaint fails to adequately plead a claim for negligence against Scheef & Stone.

C.     **As a matter of law, Breitling cannot hold Scheef & Stone liable for not "blowing the whistle" on Breitling's fraud.**

The Receiver alleges that Scheef & Stone was negligent in not withdrawing from representing Breitling, not "report[ing] up" within Breitling regarding the fraudulent activities of Faulkner and others (despite the Receiver's simultaneous allegation that Faulkner had all the Breitling entities "under his control"), and not "insist[ing]" that Breitling publicly disclose past wrongdoing to investors and the SEC. (First Am. Complaint, ¶¶ 2, 123, 126-127). The Receiver further alleges that, if Scheef & Stone had taken one or more of these actions, it would have "revealed Faulkner's fraudulent scheme many years earlier, saving Breitling tens of millions of dollars in losses and increased liabilities…." (First Am. Complaint, ¶ 129).

In effect, the Receiver alleges that Scheef & Stone owed and breached a duty to Breitling to "blow the whistle" on Breitling, and that Breitling would have incurred fewer damages from the fraud of Faulkner and others if Scheef & Stone had done so. But those allegations do not sufficiently state a claim for negligence.

As this Court held in *Reneker I*, "Assuming that an attorney has a legal duty to reveal his client's illegal actions that might harm third parties—and some courts have suggested that an attorney has no such duty—that duty is not owed to the client" but rather to "securities authorities, to investors, or to the public at large…." *Reneker I*, 2009 WL 3365616, at *4. Because the Receiver "has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors," he cannot maintain a claim based on an alleged breach of duty owed to someone other than Breitling. *See Janvey*, 712 F.3d at 190.

Similarly, the Receiver's allegation that, if Scheef & Stone had "blown the whistle" on Breitling, "someone, such as [Breitling's] creditors or government regulators, would have 'rescued'" the company from Faulkner, is insufficient to plead proximate causation. *See Ernst &*

18

*Young*, 967 F.2d at 171. It is pure speculation to claim that whistleblowing by Scheef & Stone (either internally or externally) would have prevented any of Breitling's alleged losses. Breitling—and by extension, the Receiver—"cannot claim it should recover…for not being rescued by a third party for something [it] was already aware of and chose to ignore." *See id.* In particular, it is not at all plausible to argue that Scheef & Stone's alleged failure to "report up" Faulkner's fraudulent activities caused damages to Breitling when the Receiver alleges that Faulkner himself "control[led]" all the Breitling entities. (First Am. Complaint, ¶ 2). Accordingly, the Receiver has failed to plead a cognizable claim for negligence, and Count I should be dismissed.

## IV.    Count IV fails as a matter of law.

In Count IV, the Receiver alleges a fraudulent-transfer claim against Scheef & Stone. Although the Receiver does not label the claim as either "actual" or "constructive," it is clear the claim is for actual fraudulent transfer based on the Receiver's allegation that the Breitling entities made payments to Scheef & Stone "with actual intent to hinder, delay, or defraud creditors…." (First Am. Complaint, ¶ 144). That claim fails as a matter of law, for two reasons: (1) the Receiver has failed to meet the pleading requirements of Rule 9(b), and (2) the claim is time-barred.

### A.    The Receiver has failed to sufficiently plead a claim for actual fraudulent transfer.

Although the Fifth Circuit has not decided whether Rule 9(b) applies to claims for actual fraudulent transfer, the Fifth Circuit has noted in dicta that all the other circuits that have directly addressed the question have held that Rule 9(b) does apply. *See Life Partners*, 926 F.3d at 118. Moreover, this Court has previously applied Rule 9(b) to claims for actual fraudulent transfer, including claims brought by the current Receiver in this Court's recent *Taylor* decision. *See Taylor*, 2020 WL 554583, at *11; *Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 3:17-CV-1147-D, 2018 WL 2100041, at *3-4 (N.D. Tex. May 7, 2018) (unpublished)

The sum total of the Receiver's factual allegations regarding his fraudulent transfer claim are as follows:

> 143.   Between December 1, 2013 and April 1, 2014, and at the direction of Faulkner, BOG and BECC made transfers totaling at least $331,637.48 to Scheef & Stone.
>
> 144.   Faulkner caused BOG and BECC to make these transfers with actual intent to hinder, delay, or defraud creditors of BOG and BECC. Scheef & Stone was engaged, and these transfers were made, at Faulkner's direction in furtherance of the fraudulent scheme alleged herein. Faulkner engaged Scheef & Stone in order to continue, and expand upon, his fraudulent scheme.

(First Am. Complaint, ¶¶ 143-144).

These allegations are woefully inadequate to meet the Rule 9(b) pleading standard. A claim for actual fraudulent transfer must identify "badges of fraud" as set forth in § 24.005(b) of the Texas Uniform Fraudulent Transfer Act (TUFTA). *See generally In re Soza*, 542 F.3d 1060, 1066 (5th Cir. 2008) (discussing factors). Although a plaintiff need not plead "all, or even a majority of the 'badges of fraud,'" at least "several" must be present to form "a proper basis for an inference of fraud." *See id.* at 1067 (quoting *Roland v. United States*, 838 F.2d 1400, 1403 (5th Cir. 1988)).

The "badges of fraud" listed in TUFTA include whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

TEX. BUS. & COM. CODE § 24.005(b).

The Receiver has pled none of these elements and has identified <u>no facts</u> that could meet them. His conclusory allegation that "Faulkner engaged Scheef & Stone in order to continue, and expand upon, his fraudulent scheme" is not sufficient. The Receiver has not alleged facts to show that Breitling, whether acting through Faulkner or anyone else, acted with fraudulent intent when paying Scheef & Stone for legal services. *See Taylor*, 2020 WL 554583, at *12 (generalized allegations that Faulkner caused Breitling to transfer funds to auditing firm with actual intent to hinder, delay, or defraud creditors were not sufficient to plead fraudulent intent under Rule 9(b)). In other words, the Receiver has failed to plead facts sufficient "to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. 544 at 570. Accordingly, the Receiver's claim for fraudulent transfer must be dismissed.

**B.      The fraudulent transfer claim is barred by the TUFTA statute of repose.**

Claims for actual fraudulent transfer under § 24.005(a)(1) of TUFTA are subject to the statute of repose found in § 24.010(a)(1). *See Nathan v. Whittington*, 408 S.W.3d 870, 872-74 (Tex. 2013). The statute of repose provides that a claim is "extinguished" unless it is brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant...." TEX. BUS. & COM. CODE § 24.010(a)(1).

Here, the Receiver alleges that Breitling "made transfers totaling at least $331,637.48 to Scheef & Stone" between "December 1, 2013 and April 1, 2014…." (First Am. Complaint, ¶ 143). Under TUFTA's four-year statute of repose, the Receiver's claim for fraudulent transfer expired no later than April 1, 2018 unless the time for filing was tolled in some way—either by the August 2017 and September 2017 Orders or by the one-year saving provision in § 24.010(a)(1).

The August 2017 and September 2017 Orders did not toll the period of repose because those Orders, by their terms, apply only to "any applicable statute of *limitation*," not the TUFTA statute of repose. *SEC v. Faulkner*, August 14, 2017 Order (Dkt. No. 108), ¶ 22; *SEC v. Faulkner*, September 25, 2017 Order (Dkt. No. 142), ¶ 34. Nor could the Orders have tolled the period of repose since statutes of repose are not subject to equitable tolling, "even in cases of extraordinary circumstances beyond a plaintiff's control." *CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014); *see also Methodist Healthcare Sys. of San Antonio, Ltd. v. Rankin*, 307 S.W.3d 283, 286 (Tex. 2010) ("[A] statute of repose is not subject to judicially crafted rules of tolling or deferral.").[5]

The one-year saving provision in § 24.010(a)(1) does not save the fraudulent-transfer claim either. The Fifth Circuit has held that the one-year period begins to run "when the fraudulent nature of the transfer was or reasonably could have been discovered." *Janvey*, 712 F.3d at 194-95.

As an initial matter, the First Amended Complaint does not contain any information, other than conclusory statements that "Faulkner engaged Scheef & Stone in order to continue, and expand upon, his fraudulent scheme," to explain what exactly the Receiver alleges is the "fraudulent nature of the transfer"—a further indication that the claim should be dismissed as

---

[5] Additionally, the August 2017 Order would not apply to a cause of action for fraudulent transfer against Scheef & Stone, a law firm, because that Order applies only to "Receivership Assets," a term it defines as "all *oil-and-gas assets* held in the name of any of the Receivership Defendants…." *SEC v. Faulkner*, August 14, 2017 Order (Dkt. No. 108), pg. 2 (emphasis added). A cause of action against a law firm would not fall within the ordinary and plain meaning of the term "oil-and-gas asset."

insufficiently pled. But more fundamentally, the Receiver was appointed on August 14, 2017. By that point, the following events had occurred and were public record:

(a) The SEC's Complaint in the Enforcement Action had been on file for over a year. That 63-page Complaint details numerous allegations of fraud against the Breitling principals, including and especially Faulkner. *See SEC v. Faulkner*, Complaint (Dkt. No. 1), *passim*. In particular, the Complaint in the Enforcement Action alleges that Breitling filed a Form 8-K with the SEC on September 4, 2015 acknowledging that its financial statements for 2012, 2013, and the first three quarters of 2014 contained material misstatements. *SEC v. Faulkner*, Complaint (Dkt. No. 1), ¶ 24.

(b) Former Breitling CFO Rick Hoover, former Breitling COO Parker Hallam, and Crude Energy (one of the Breitling entities) had all filed responsive pleadings in the Enforcement Action. All three of them pled advice of counsel as an affirmative defense. *See SEC v. Faulkner*, Defendant Rick Hoover's Answer to Plaintiff's First Amended Complaint (Dkt. No. 28), pg. 23; *SEC v. Faulkner*, Defendant Crude Energy LLC's Answer to Complaint (Dkt. No. 54), pg. 32, ¶ 8; *SEC v. Faulkner*, Defendant Parker R. Hallam's Answer to Complaint (Dkt. No. 55), pg. 32, ¶ 8.

Furthermore, on August 28, 2017 (fourteen days after the Receiver's appointment), the Receiver prepared a declaration in support of the SEC's opposition to an extension of time sought by Faulkner. In that declaration, the Receiver alleged that Faulkner and others connected with Breitling were "refus[ing] to turnover oil and gas-related assets and records" and "Actively Seeking to Redirect and Dissipate Receivership Assets…." *SEC v. Faulkner*, Declaration of Thomas L. Taylor III (Dkt. No. 117-2), pg. 6, ¶ 13.[6]

---

[6] The Court may take judicial notice of the existence (but not the truth) of the occurrences and positions taken in the Enforcement Action. *See Reneker II*, 2012 WL 2158733, at *14.

Thus, no later than the time the September 2017 Order was entered, the Receiver knew, or was on notice, that (1) Breitling and Faulkner were being accused of fraud, (2) Breitling had publicly reported existential misstatements in its financials, (3) Breitling, its associated entities, and its principals had counsel—and at least some of them were asserting advice of counsel as an affirmative defense in the Enforcement Action; and (4) per the Receiver's own allegations, Faulkner and others connected to Breitling were continuing to attempt to hide assets.

That is sufficient information to put the Receiver on notice that payments by Breitling to Scheef & Stone could (allegedly) constitute fraudulent transfers under TUFTA. Yet the Receiver waited nearly two years from the date of the September 2017 Order (September 25, 2017) before finally seeking leave of the Court to sue Scheef & Stone on August 30, 2019. *SEC v. Faulkner*, Receiver's Motion for Leave to Commence Ancillary Litigation (Dkt. No. 477). Therefore, the Receiver cannot rely on the one-year saving provision under TUFTA to preserve the fraudulent-transfer claim.[7] For these reasons, the Receiver's Count IV fraudulent transfer claim should be dismissed as time-barred.

## CONCLUSION

For the foregoing reasons, Defendants Scheef & Stone, LLP, Roger Crabb, and Mitch Little respectfully request that the Court grant their Motion to Dismiss Receiver's First Amended Complaint, dismiss the Receiver's claims asserted against them, and grant such further relief to which they may be entitled.

---

[7] The Receiver and Scheef & Stone entered into a tolling agreement effective May 16, 2018. However, that agreement expired effective December 16, 2018. There were 234 days between the entry of the September 2017 Order and the effective date of the tolling agreement (9/25/17 to 5/16/08), and 258 days between the expiration of the tolling agreement and the Receiver's motion for leave to sue (12/16/08 to 8/30/19), for a total of 492 days not covered by the tolling agreement. Thus, even taking the tolling agreement into account, the Receiver's fraudulent-transfer claims are untimely.

Respectfully submitted,

By */s/ Daniel D. Tostrud* _____
   DANIEL D. TOSTRUD
   State Bar No. 20146160
   dtostrud@cobbmartinez.com
   LINDSEY K. WYRICK
   State Bar No. 24063957
   lwyrick@cobbmartinez.com
   NATHAN WHITE
   State Bar No. 24117284
   nwhite@cobbmartinez.com

   COBB MARTINEZ WOODWARD PLLC
   1700 Pacific Avenue, Suite 3100
   Dallas, Texas 75201
   (214) 220-5200 (Telephone)
   (214) 220-5299 (Fax)

**COUNSEL FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2020, the above and foregoing document was forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure.

By */s/ Daniel D. Tostrud* _____
   DANIEL D. TOSTRUD