IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS L. TAYLOR, III, solely in his capacity as Court-appointed temporary Receiver for Breitling Energy Corporation, *et al.* | § § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 3:19-cv-02602-D |
| SCHEEF & STONE, LLP, ROGER CRABB, and MITCH LITTLE, | § § § § | |
| Defendants. | § | |

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS RECEIVER'S
FIRST AMENDED COMPLAINT

Defendants Scheef & Stone, LLP, Roger Crabb, and Mitch Little (together, "Scheef & Stone" or "Defendants"), through undersigned counsel, hereby file this reply brief in support of their motion dismiss the Receiver's First Amended Complaint.

i

# ARGUMENT

I. **The Receiver has conceded that Counts II and III must be dismissed to the extent they purport to assert claims for aiding and abetting.**

Scheef & Stone previously argued there is no cause of action for aiding and abetting under Texas law. (Br. Supp., at 7-8). The Receiver concedes that is correct. (Br. Opp., at 8-9). Therefore, Counts II and III must be dismissed to the extent they assert claims for aiding and abetting.

II. **Counts II and III must be dismissed to the extent they purport to assert claims for "knowing participation in breach of fiduciary duty."**

The Receiver argues that he has a viable claim for "knowing participation in breach of fiduciary duty" because that claim still exists under Texas law and is not barred by the anti-fracturing doctrine. (Br. Opp., at 8, 10-12). Both arguments are flawed. Although the Receiver correctly points out that "knowing participation" is a recognized claim under Texas law, such a claim requires a showing that Scheef & Stone had "actual awareness, at the time of the conduct," that Faulkner was breaching a fiduciary duty to Breitling. *See Franklin D. Azar & Associates, P.C. v. Bryant*, 417CV00418ALMKPJ, 2019 WL 5390172, at *4 (E.D. Tex. July 30, 2019) (unpublished) (quoting *Seven Seas Petroleum, Inc. v. CIBC World Markets Corp.*, 2013 WL 3803966, at *14 (S.D. Tex. July 19, 2013) (unpublished)), *report and recommendation adopted*, 4:17-CV-00418, 2019 WL 4071782 (E.D. Tex. Aug. 29, 2019) (unpublished).

The Receiver concedes that he alleges Scheef & Stone "either knew of [or] should have known of Faulkner's misconduct"—*not* that Scheef & Stone had complete, actual knowledge of it. (Br. Opp., at 11 n.11). Therefore, to the extent the Receiver fails to allege actual knowledge of Faulkner's misconduct, his claims for knowing participation must be dismissed.

Similarly (and logically), an essential element of a knowing-participation claim is actual, affirmative participation in the breach of a fiduciary relationship. *See generally D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 216 (5th Cir. 2018) (quoting *Meadows v. Hartford Life*

*Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007)). It follows that mere inaction or failure to act cannot constitute "participation" in a fiduciary breach; a person who knows of a fiduciary breach and simply fails to intervene to stop it cannot be said to have "participated" in the breach in any meaningful sense of the word. *See Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 3:15-CV-4108-D, 2017 WL 635031, at *12 (N.D. Tex. Feb. 16, 2017) (Fitzwater, J.) (unpublished) (allowing knowing-participation claim to go forward based on showing that defendant "actively participated in the breach of the duty").

Tellingly, a full page of the Receiver's recapitulation of the First Amended Complaint's allegations asserts that Scheef & Stone incurred liability to Breitling by "[n]eglecting" to perform various tasks. (Br. Opp., at 5-6). Such inaction or failure to act cannot constitute "knowing participation," so the Receiver's claims for knowing participation must be dismissed to the extent they rely on Scheef & Stone's alleged failures to act.

**III.     Counts II and III must be dismissed to the extent they purport to assert claims for participation in fraud or in a "fraudulent scheme."**

This Court held in the parallel *Taylor* case that claims for participation in fraud are subject to Rule 9(b). *Taylor v. Rothstein Kass & Co., PLLC*, 3:19-CV-1594-D, 2020 WL 554583, at *8 (N.D. Tex. Feb. 4, 2020) (unpublished) (quoting *Halprin v. FDIC*, 2016 WL 5718021, at *3 (W.D. Tex. Sept. 30, 2016) (unpublished)). In response, the Receiver attempts to characterize his claim as one for "assist[ing] Faulkner to…engage in fraud," (*see* Br. Opp., p. 7)—but a fraud claim is a fraud claim, and must be pled with all the required elements under Rule 9(b). Moreover, "to adequately plead that [Scheef & Stone] is jointly liable for Faulkner's fraud by participating in his fraudulent scheme," the Receiver must "plausibly plead that [Scheef & Stone] itself engaged in fraud"; the elements of fraud, and the requirements of Rule 9(b), must be met as to Scheef & Stone "directly, and not merely as an alleged joint tortfeasor." *See Taylor*, 2020 WL 554583, at *9.

2

The elements of fraud are (1) "a material representation" (2) that is "false," (3) that the speaker knew to be false or made "recklessly without any knowledge of the truth and as a positive assertion," (4) that is made "with the intent that the other party should act upon it," (5) that led the other party to act "in reliance on the representation," (6) resulting in "injury." *Saenz v. Gomez*, 899 F.3d 384, 391 (5th Cir. 2018) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)). Tellingly, these elements appear nowhere in the First Amended Complaint. (First Am. Complaint, *passim*). But even beyond that, although the Receiver identifies some factual allegations that he argues might support a fraud claim (*see* Br. Opp., at 9), those allegations all deal with alleged misstatements or actions in relation to Breitling's investors and regulators, not Breitling itself. *And the Receiver does not represent Breitling's investors or regulators*.

"[A] federal equity receiver has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors" or anyone else. *Janvey v. Democratic Senatorial Campaign Comm., Inc. ("DSCC")*, 712 F.3d 185, 190 (5th Cir. 2013). The Receiver can assert only claims *by Breitling* against Scheef & Stone, not claims by investors or regulators. Thus, to plead a claim for fraud, the Receiver must plead facts showing that Scheef & Stone knowingly made material misstatements *to Breitling* with the intention that *Breitling* rely on them, and that *Breitling* relied on them and suffered damages as a result. The Receiver has done no such thing, so the "participation in fraud" claims against Scheef & Stone must be dismissed.[1]

### IV.   Count I is barred by the statute of limitations.

In response to the argument that the Receiver's negligence claims are time-barred, the Receiver first argues "there is no allegation anywhere in the Complaint that Faulkner's actions

---

[1]   Furthermore, even if the Receiver had alleged that Scheef & Stone made actionable misrepresentations to Faulkner, the Receiver elsewhere vociferously argues that Faulkner's knowledge and actions are not attributable to Breitling. (*See* Br. Opp., at 12-21).

3

benefitted" the Breitling entities. (Br. Opp., at 12-13). Although the Receiver does not label it a "benefit," the First Amended Complaint alleges Faulkner raised approximately $150 million from investors—funds that "benefitted" Breitling. *See F.D.I.C. v. Ernst & Young*, 967 F.2d 166, 171 (5th Cir. 1992). That is critical, because, although the Receiver asserts that Faulkner was acting adversely to the Breitling entities (*see* Br. Opp., at 12), the Receiver does not at all address the issue of how to reconcile Faulkner's personal interests and his "joint interests" with Breitling. *See Askanase v. Fatjo*, 828 F. Supp. 465, 470 (S.D. Tex. 1993).

"[A]n agent's knowledge" is attributed to the principal for limitations purposes unless "the agent acts '*entirely* for his own or another's purposes.'" *F.D.I.C. v. Shrader & York*, 991 F.2d 216, 223 (5th Cir. 1993) (quoting *Restatement (Second) of Agency* § 282(1) (1957)) (emphasis added). That is true "even though the agent's primary interest is inimical to that of his principal." *Askanase*, 828 F. Supp. at 470 (citing *Shrader & York*, 991 F.2d at 223). And that is the situation reflected by Faulkner's actions in both raising money on behalf of the Breitling entities and allegedly misappropriating some of it. (*See* First Am. Complaint, ¶ 2).

The Receiver mocks the idea that Faulkner's alleged actions were "good for, or benefitted, the Breitling entities"—and ultimately, they weren't. (Br. Opp., at 15). But harmful and even illegal actions can be taken on behalf of, and attributed to, an entity, *see Ernst & Young*, 967 F.2d at 171, and the mere fact that the actions "eventually hurt" the entity does not prevent attribution if there was even a partial intent to benefit the entity. *See Rogers v. McDorman*, 521 F.3d 381, 394-95 (5th Cir. 2008). The First Amended Complaint depicts that scenario, which is why Faulkner's knowledge of Scheef & Stone's actions is attributable to Breitling.[2]

---

[2] The Receiver cites cases in which the knowledge of company officers who "deepened" the company's "insolvency" was not imputed to the company. *See F.D.I.C. v. Nathan*, 804 F.Supp. 888, 894 (S.D. Tex. 1992) (officers "fraudulently extend[ed] the life of the thrift"); *Smith ex rel.*

4

Incredibly, the Receiver also argues that "receivership entities themselves are <u>innocent</u> of wrongdoing and cannot have intended to violate the law or deceive investors." (Br. Opp., at 13, emphasis in original). In the Receiver's view, his appointment washed away of all Breitling's prior sins and made it as if Breitling had never known of any wrongdoing by Faulkner or anyone else.

That is wrong. The Receiver's argument is based on a misunderstanding of the Fifth Circuit's decision in *DSCC*, which held that "the knowledge and effects of the fraud of *the principal of a Ponzi scheme*…are not imputed to his captive corporations." *DSCC*, 712 F.3d at 190 (emphasis added). *DSCC*'s holding is limited to "standing and knowledge in Ponzi-scheme cases," *see id.* at 193, consistent with longstanding Fifth Circuit jurisprudence applying a presumption of intent to defraud in such cases. *See generally Janvey v. Brown*, 767 F.3d 430, 439 (5th Cir. 2014) ("In this circuit, proving that a transferor operated as a Ponzi scheme establishes the fraudulent intent behind the transfers it made.").

No case within the Fifth Circuit has applied *DSCC*'s holding outside the context of a Ponzi scheme. Nor do any pre-*DSCC* Fifth Circuit cases apply the sort of blanket immunity from the statute of limitations the Receiver asserts; rather, those decisions focus on whether the agent was acting for the benefit of, or adversely to, the principal. *See, e.g.*, *Shrader & York*, 991 F.2d at 223; *Ernst & Young*, 967 F.2d at 171. This Court recognized as much by citing *Shrader & York* and *Ernst & Young* in its analysis in *Taylor*. *See Taylor*, 2020 WL 554583 at *3. Here, there is no allegation that Breitling was a Ponzi scheme, or that Breitling's earlier investors were paid from

---

*Estates of Boston Chicken, Inc. v. Arthur Andersen L.L.P.*, 175 F. Supp. 2d 1180, 1199 (D. Ariz. 2001) (officers engaged in "scheme to continue [the] company in business past its point of insolvency"). To the extent the harm or damages alleged by the Receiver are based on a theory that Scheef & Stone (or Faulkner, for that matter) deepened Breitling's insolvency, such claims fail as a matter of law because the Fifth Circuit has held that "deepening insolvency is not a valid theory of damages." *In re SI Restructuring, Inc.*, 532 F.3d 355, 363 (5th Cir. 2008).

5

payments made by later investors. (*See* First Am. Complaint, *passim*); *compare, e.g., Brown*, 767 F.3d at 442 n.67 (describing such an arrangement). Consequently, *DSCC* does not apply.

The Receiver also attempts to distinguish *Ernst & Young* by arguing that, unlike the assignee in that case, the Receiver is "seeking to recover funds for the benefit of defrauded investor creditors…." (Br. Opp., at 16). But the Receiver lacks standing to bring claims on behalf of Breitling's investors or other creditors. *See DSCC*, 712 F.3d at 190 ("[A] federal equity receiver has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors…."). Like the assignee of the failed company's claims against its accountants in *Ernst & Young*, the Receiver can only bring claims possessed by the entity in receivership (Breitling).

Finally, the Receiver argues that imputation does not apply because he has pled that Scheef & Stone colluded with Faulkner as described in Counts II and III. (Br. Opp., at 16). But as described above, the Receiver cannot bring those claims either, so they do not prevent the imputation of Faulkner's knowledge to Breitling. Accordingly, Count I is time-barred.

**V.    Count I fails because the Receiver has not adequately pled that Scheef & Stone's alleged breaches of duty caused the damages the Receiver is claiming.**

Regarding the merits of Count I as the Receiver has pled it, the Receiver accuses Scheef & Stone of making "a thinly disguised attempt to backdoor an *in pari delicto* defense by improperly imputing Faulkner's…knowledge, intent and conduct to the Breitling entities." (Br. Opp., at 17). That is a misunderstanding of Scheef & Stone's argument. Scheef & Stone are not asserting *in pari delicto* but rather argue that the Receiver has failed to plausibly plead breaches of duty by Scheef & Stone causing damages to Breitling.

Critically, this is not an argument about imputation. Even if Faulkner's actions and knowledge could not be imputed to Breitling, they would still be relevant to the causation analysis.

6

In other words: the question is whether there was anything Scheef & Stone could and should have done that would have prevented Faulkner from carrying out the alleged scheme.

As this Court previously held—and as the Receiver implicitly concedes (*see* Br. Opp., at 19-20)—proximate cause is an essential element of a negligence claim and must be pled without resort to "speculative" conjectures about "uncertain, independent actions of third-parties" such as "regulatory authorities" and "investors." *See Reneker v. Offill*, CIV.A.3:08-CV-1394-D, 2009 WL 3365616, at *6 (N.D. Tex. Oct. 20, 2009) (unpublished). Yet the First Amended Complaint relies on exactly that, alleging that, if Scheef & Stone had "demanded" Breitling stop violating securities laws and "augment their disclosures to investors and potential investors," "Faulkner's fraudulent scheme" would have been revealed "many years earlier, saving Breitling tens of millions of dollars in losses and increased liabilities…." (First Am. Complaint, ¶ 129). In other words, the Receiver's theory of causation is that, if Scheef & Stone had withdrawn from representing Breitling or "reported up" Faulkner's actions, Faulkner's fraud would have been stopped—by somebody.

The Receiver's own allegations reveal how speculative (if not outright fantastical) that theory is. The Receiver argues that Faulkner caused Breitling "to engage in fraud and violate securities laws" (Br. Opp., at 14), "manipulated and used the innocent Breitling entities" (Br. Opp., at 15), and had to be removed as CEO and replaced by the Receiver to prevent the Breitling entities from being "robotic tools" and "evil zombies." (Br. Opp., at 13, quoting *DSCC*, 712 F.3d at 190-92). If Faulkner really so dominated Breitling's operations with illegal and fraudulent activity, then there is no way to say—beyond sheer speculation—whether anything, including different actions by Scheef & Stone, would have dissuaded him from carrying out his scheme.

The Receiver objects that these considerations "ask the Court to speculate as to causation" (*see* Br. Opp., at 19), but that is exactly the problem—there is no way to consider the Receiver's

7

theory *without* speculation. Indeed, the Receiver goes on to speculate in the other direction, arguing it is "plausible" that different legal advice would have prevented Faulkner from "sell[ing] his fraudulent securities in the volume that he did, such that the damages to the entities would have been lessened." (Br. Opp., at 20). The fact that the parties are arguing about which speculative outcome is more likely is proof the Receiver has failed to plausibly plead causation.

Finally, the Receiver attempts to short-circuit this analysis by arguing that "the only redress for Defendants' conduct is through the Receiver's claims in the instant suit." (Br. Opp., at 19 n.28). But that does not eliminate the responsibility to plead a plausible, non-speculative theory of causation. Because the Receiver has failed to do so, Count I must be dismissed as a matter of law.[3]

## VI. Count IV fails to sufficiently plead a claim for actual fraudulent transfer.

As an initial matter, the Receiver argues that claims for actual fraudulent transfer are not subject to Rule 9(b). (Br. Opp., at 23 n.31). While there does appear to be a split of authority on that issue, this Court has previously applied Rule 9(b) in multiple instances, including in *Taylor*. *See Taylor*, 2020 WL 554583, at *11; *Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 3:17-CV-1147-D, 2018 WL 2100041, at *3-4 (N.D. Tex. May 7, 2018) (unpublished). Fifth Circuit dicta also appears to approve. *See In re Life Partners Holdings, Inc.*, 926 F.3d 103, 118 (5th Cir. 2019) (deciding the case on other grounds but noting that all other circuits that have considered the issue have applied Rule 9(b)). Rule 9(b) applies and should be applied here.

The Receiver argues his fraudulent transfer claim is sufficiently pled based on the general allegations regarding Faulkner's fraudulent activity, plus an assertion that "Faulkner's payments

---

[3] The Receiver argues that proximate cause cannot be considered at this stage because it is "a question of fact for the jury to decide." (Br. Opp., at 20). That is not the case; causation, like any other element of a cause of action, must be plausibly pled to survive dismissal. *See, e.g.*, *Reneker*, 2009 WL 3365616, at 3, 6 (dismissing negligence claim for failure to plead causation).

to Defendants (using Breitling entity funds) were part and parcel of the overall fraud scheme." (Br. Opp., at 23-24). But merely alleging payments to a service provider by someone who was also engaging in fraud is insufficient to show "actual intent to hinder, delay, or defraud any creditor" as required by law. *See* Tex. Bus. & Comm. Code § 24.005(a)(1).

The Receiver also claims to have identified a few badges of fraud in the factual allegations of the First Amended Complaint. (Br. Opp., at 24). But none of them demonstrate a plausible fraudulent transfer claim. The fact of "suits or threats of suits against the Breitling entities" is not, by itself, evidence of fraudulent transfer; if it were, every company with claims or litigation against it would be deemed a fraudulent transferor. *See, e.g.*, *Barcelo v. Teva Pharm. U.S.A., Inc.*, CV H-20-00017, 2020 WL 1666116, at *5 (S.D. Tex. Apr. 2, 2020) (unpublished) (mere knowledge of pending litigation insufficient to make a corporate transfer of assets fraudulent as a matter of law). Nor is Faulkner's misappropriation of funds for his own use evidence of a fraudulent transfer to Scheef & Stone, which is not alleged to be affiliated with Faulkner. (*See* First Am. Complaint, *passim*). Finally, the only specific claim of Breitling's insolvency in the First Amended Complaint references a March 2015 statement made *after* the time period for which the Receiver seeks to recover payments. (*See* Br. Opp., at 24 n. 34; First Am. Complaint, ¶¶ 116, 143). Because the Receiver has not pled a plausible claim for fraudulent transfer, Count IV must be dismissed.

**VII.     Count IV is time-barred.**

The Receiver accuses Scheef & Stone of "ignor[ing]" the one-year saving provision in the TUFTA statute of repose (Br. Opp., at 21), but that is not the case; the Receiver's claim for fraudulent transfer is time-barred even under that provision. As Scheef & Stone explained in its initial brief, publicly known facts made the allegedly "fraudulent nature of the conveyance" apparent to the Receiver at the time he was appointed. (*See* Br. Supp., at 23; Br. Opp., at 22).

9

In response the Receiver makes no effort to identify any contrary facts; rather, he simply repeats the mantra from the First Amended Complaint that "he did not discover and could not with the exercise of reasonable diligence have discovered" the cause of action, plus a conclusory statement that limitations issues are "questions of fact." (Br. Opp., at 22). But, as shown in Scheef & Stone's initial brief, the allegedly fraudulent nature of Breitling's business and Faulkner's actions were already public knowledge when the Receiver was appointed, and the Receiver still waited over a year to seek leave to sue. (Br. Supp., at 23-24). Count IV is time-barred.

### VIII.  No leave to amend should be granted.

The grant or denial of leave to amend pleadings is a matter within this Court's discretion, and although leave to amend is favored, "it is not automatic." *Torch Liquidating Tr. ex rel. Bridge Associates L.L.C. v. Stockstill*, 561 F.3d 377, 391 (5th Cir. 2009) (quoting *Southmark Corp. v. Schulte Roth & Zabel*, 88 F.3d 311, 314 (5th Cir. 1996)). Factors justifying denying a motion to amend include the failure of previous amendments to cure deficiencies. *See id.* (quoting *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 268 (5th Cir. 2004)). Here, the Receiver has already amended his Complaint once, yet the deficiencies described above are still present. That is grounds for dismissing the Receiver's claims, as set forth above, without granting leave to amend.

### CONCLUSION

For the foregoing reasons, Defendants Scheef & Stone, LLP, Roger Crabb, and Mitch Little respectfully request that the Court grant their Motion to Dismiss Receiver's First Amended Complaint, dismiss the Receiver's claims asserted against them, and grant such further relief to which they may be entitled.

Respectfully submitted,

By */s/ Daniel D. Tostrud*
    DANIEL D. TOSTRUD
    State Bar No. 20146160
    dtostrud@cobbmartinez.com
    LINDSEY K. WYRICK
    State Bar No. 24063957
    lwyrick@cobbmartinez.com
    NATHAN WHITE
    State Bar No. 24117284
    nwhite@cobbmartinez.com

    COBB MARTINEZ WOODWARD PLLC
    1700 Pacific Avenue, Suite 3100
    Dallas, Texas 75201
    (214) 220-5200 (Telephone)
    (214) 220-5299 (Fax)

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2020, the above and foregoing document was forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure.

By */s/ Daniel D. Tostrud*
    DANIEL D. TOSTRUD

11