IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS L. TAYLOR III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:19-CV-2602-D |
| VS. | § | |
| | § | |
| SCHEEF & STONE, LLP, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by Thomas L. Taylor III ("Taylor"), the court-appointed temporary receiver, asserting claims against defendants Scheef & Stone, LLP, Roger Crabb, and Mitch Little (collectively, "Scheef & Stone") for negligence and gross negligence, aiding, abetting, or participating in breaches of fiduciary duties, aiding, abetting, or participating in the fraudulent scheme of Christopher A. Faulkner ("Faulkner"), and fraudulent conveyances, Scheef & Stone moves to dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b). For the reasons that follow, the court grants the motion in part and denies it in part and grants Taylor leave to replead.

I

In June 2016 the Securities and Exchange Commission ("SEC") filed a civil enforcement action against Faulkner and others, alleging that Faulkner and his codefendants orchestrated a massive fraudulent scheme through the offer and sale of oil and gas related

securities to public investors.[1]  The court appointed Taylor as temporary receiver for the estates of Faulkner, Breitling Energy Corporation ("BECC"), Breitling Oil & Gas Corporation ("BOG"), Breitling Royalties Corporation ("BRC"), Crude Energy, LLC, and Crude Royalties, LLC, among others (collectively, the "Breitling Entities" or "Breitling"). Between 2011 and 2016, Faulkner, as Chief Executive Officer and controlling shareholder, used the Breitling Entities to swindle investors out of millions of dollars and misappropriate approximately $32.8 million of the Breitling Entities' funds through the receipt of transfers and the payment of personal expenses from company bank and credit card accounts.

Scheef & Stone acted as the Breitling Entities' primary outside counsel between April 2010 and the end of 2015 and assisted the Breitling Entities with state and federal securities laws compliance.  Despite "a steady drum beat of state securities regulatory inquiries and 'cease and desist' orders and almost non-stop investor claims of fraud" against the Breitling Entities, Scheef & Stone continued to work on "virtually all of the Breitling Entities' Reg D private placement offerings"[2] and continued "counseling Breitling with respect to federal and

---

[1]The court recounts the background facts favorably to Taylor as the nonmovant.  In deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6) standard)).

[2]"Regulation D," occasionally referred to as "Reg D," "exempts an issuer who offers and sells restricted securities without general solicitation to a limited number of investors, as long as those investors are sophisticated enough to understand the merits and risks of the offering, and certain information is furnished to the investors."  *SEC v. Rose*, 2007 WL 7117887, at *5 (S.D. Tex. Mar. 23, 2007) (citing Rule 506 of Regulation D, 17 C.F.R. §

state securities laws[.]" Am. Compl. 3. Scheef & Stone allegedly "facilitate[d] the offer and sale to investors of unregistered securities" and "protect[ed] the Breitling Entities from investor claims and regulatory scrutiny [to] keep Breitling in business selling its illicit and illegal securities." *Id.* at 2. According to the first amended complaint ("amended complaint"), Scheef & Stone was "aware that the Breitling Entities were operating a securities sales 'boiler room' operation and using unlicensed sales personnel—some with prior documented regulatory violations—to engage in 'general solicitation' of investors via Breitling's Website, internet advertising," and "cold calls." *Id.* Scheef & Stone also allegedly created a "bonus" program that resulted in an excess of $100 million in securities sold by unlicensed Breitling sales staff who received commissions they were not lawfully entitled to receive. And although Scheef & Stone was aware of "the pendency of a major enforcement investigation by the SEC and numerous other regulatory inquiries," Scheef & Stone did not advise the Breitling Entities to disclose the pending investigation to investors and never advised the Breitling Entities to cease offering unregistered securities despite its knowledge that their general solicitation of investors barred the "Reg D" exemption. *Id.* at 5.

Taylor filed the instant lawsuit against Scheef & Stone, asserting the following claims: negligence and gross negligence; aiding, abetting, or participating in breaches of fiduciary

---

230.506).

duties;[3] aiding, abetting, or participating in Faulkner's fraudulent scheme; and fraudulent conveyances.  Scheef & Stone moves to dismiss under Rules 12(b)(6) and 9(b).  Taylor opposes the motion.

## II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a motion to dismiss, Taylor must allege enough facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

---

[3]Taylor labels "Count II" as "Breach of Fiduciary Duties" in the table of contents of his amended complaint, but the body of the amended complaint describes "Count II" as "Participation in Breach of Fiduciary Duties."  Am. Compl. 50.  Because Taylor does not appear to assert a direct breach of fiduciary duty claim, the court addresses this claim as one for *participation in* a breach of fiduciary duty.

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

III

The court begins with Scheef & Stone's contention that Taylor's negligence and gross negligence claims are time-barred.

A

Limitations is an affirmative defense. *See* Rule 8(c)(1).  To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the "successful affirmative defense [must] appear[] clearly on the face of the pleadings." *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.) (alterations added) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).  In other words, Scheef & Stone is not entitled to dismissal under Rule 12(b)(6) unless Taylor has "pleaded [him]self out of court by admitting to all of the elements of the defense." *Id.* (quoting *Sivertson v. Clinton*, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.)).[4]

---

[4]In light of the standard that applies when deciding whether Scheef & Stone is entitled to dismissal based on its limitations defense, the court's decision *infra* at § III(C) not to

Under Texas law, the statute of limitations for negligence actions is two years. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West 2017). The "limitations period begins to run when 'the claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of his cause of action.'" *Janvey ex rel. Sharp Capital, Inc. v. Thompson & Knight LLP*, 2003 WL 21640573, at *2 (N.D. Tex. July 8, 2003) (Lynn, J.) (quoting *FDIC v. Shrader & York*, 991 F.2d 216, 221 (5th Cir. 1993)). But if, as in a claim brought by a receiver, a wrongdoing corporate officer's knowledge of the facts giving rise to the negligence claim is imputed to the corporation, the claim accrues when the officer acquires such knowledge. *See, e.g., id.* at *3 ("[T]o hold that [the receiver's] claim[] . . . [is] barred by the statute of limitations, the Court would have to hold (1) that [the officer] discovered . . . the facts giving rise to these claims; (2) that [the officer's] knowledge is imputed to [the corporation]; and (3) that certain exceptions . . . do not apply.").

B

Relying on *FDIC v. Ernst & Young*, 967 F.2d 166, 170-71 (5th Cir. 1992), Scheef & Stone contends that Faulkner's knowledge should be imputed to the Breitling Entities because Taylor's allegations demonstrate that Faulkner conducted a fraud on *behalf of* the corporation by raising approximately $150 million in gross proceeds, only a portion of which benefited him personally. And because Taylor's "last specific factual allegation of

_____

impute Faulkner's knowledge to the Breitling Entities is not inconsistent with any other conclusion reached in today's decision.

- 6 -

negligence—the alleged disregard of notice of a lawsuit against Breitling—is dated June 2015," Scheef & Stone asserts that the two-year statute of limitations for Taylor's negligence claims had already expired by June 2017, before the court's August 2017 and September 2017 orders tolling any applicable statute of limitations.  Ds. Br. 12.

C

As the court concluded in *Taylor v. Rothstein Kass & Co.*, 2020 WL 554583 (N.D. Tex. Feb. 4, 2020) (Fitzwater, J.), Scheef & Stone "is not entitled to dismissal based on the statute of limitations because it is not clear from the face of the pleadings that Faulkner's knowledge should be imputed to the Breitling Entities."  *Id.* at *3.  Although "the general rule [is] that courts are to impute an officer/director's knowledge to the corporation" so long as "the officer/director is acting on the corporation's behalf[,] . . . there is an exception to imputation."  *Askanase v. Fatjo*, 130 F.3d 657, 666 (5th Cir. 1997) (citing *Ernst & Young*, 967 F.2d at 171).  Where a "plaintiff can show that the officer/director was acting *adversely* to the corporation and entirely for his own or another's purpose, the[] limitations will be tolled."  *Id.* (emphasis added) (citing *Shrader & York*, 991 F.2d at 223-24).  Courts have refused to impute the knowledge of principals to controlled entities where the officers "allegedly filled their own pockets while fraudulently extending the life of the institution they continued to milk" and where they "systematically looted [the company] of its most profitable and least risky businesses as well as millions of dollars in income[.]"  *Askanase v. Fatjo*, 828 F. Supp. 465, 471 (S.D. Tex. 1993) (citing *Schacht v. Brown*, 711 F.2d 1343, 1347-48 (7th Cir. 1983)) (denying motion to dismiss where plaintiffs pleaded that principal

- 7 -

looted company to the point of insolvency).

Here, Taylor explicitly alleges that "Faulkner caused the Breitling Entities to fraudulently sell tens of millions of dollars' worth of securities to investors" and that he "diverted and distributed substantial sums to himself for his own personal benefit and in support of his lavish lifestyle." Am. Compl. 47. Because Taylor has pleaded a factual scenario that may give rise to an exception to imputation, "dismissal at this juncture would be improper, as it cannot be said that Plaintiffs could prove no set of facts entitling them to relief." *Askanase*, 828 F. Supp. at 471. Moreover, because it "is a factual issue" whether Faulkner acted on behalf of, or against, the Breitling Entities such that his knowledge should be imputed to them, this question may be better decided in the context of a summary judgment motion. *See FDIC v. Nathan*, 804 F. Supp. 888, 894-95 (S.D. Tex. 1992) (noting that question whether principal was "acting for or against the [company] [was] a factual issue," and suggesting such questions are properly resolved "on summary judgment."); *see also Reneker v. Offill*, 2012 WL 2158733, at *10 (N.D. Tex. June 14, 2012) (Fitzwater, C.J.) (deciding matter of imputation in legal malpractice action at summary judgment stage).

The court therefore declines to dismiss Taylor's negligence and gross negligence claims on the basis that they are time-barred.

IV

The court turns next to Scheef & Stone's assertion that Taylor's professional negligence claims must be dismissed for failure to plausibly plead a breach of Scheef & Stone's duties, and to plausibly plead causation.

A

"Attorneys owe their clients the duty to act with ordinary care—i.e., in a manner consistent with the standard of care that would be expected to be exercised by a reasonably prudent attorney." *Beck v. L. Offs. of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 426 (Tex. App. 2009, no pet.) (citing *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989)). Complaints that an attorney failed to meet this duty of ordinary care sound in negligence. *See, e.g., Cosgrove*, 774 S.W.2d at 664 ("An attorney malpractice action in Texas is based on negligence."). A plaintiff asserting a claim for professional negligence[5] must prove "that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred." *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995). "The standard is an objective exercise of professional judgment, not the subjective belief that his acts are in good faith." *Cosgrove*, 774 S.W.2d at 665. "If an attorney makes a decision which a reasonably prudent attorney could make in the same or similar circumstance, it is not an act of negligence even if the result is undesirable." *Id.*

To establish proximate cause, a plaintiff must prove both cause in fact and foreseeability. *Hall v. Stephenson*, 919 S.W.2d 454, 466 (Tex. App. 1996, pet. denied) (citing *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995)). "Cause in fact

_____

[5]Courts have "use[d] 'legal malpractice' and 'professional negligence' interchangeably to refer to claims arising from an attorney's allegedly inadequate legal representation, although 'professional negligence' might be a more precise term." *Beck*, 284 S.W.3d at 427 n.10.

- 9 -

means that the defendant's act or omission was a substantial factor in bringing about the injury that would not otherwise have occurred." *Id.* (citing *Prudential Ins. Co. v. Jefferson Assocs. Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995)).  In other words, the "cause-in-fact standard requires not only that the act or omission be a substantial factor but also that it be a but-for cause of the injury or occurrence." *Rogers v. Zanetti*, 518 S.W.3d 394, 403 (Tex. 2017). "Foreseeability means that the actor should have anticipated the dangers that his negligent act created for others.  [It] does not require that the actor anticipate the precise consequences of his actions." *Hall*, 919 S.W.2d at 466 (citing *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992)).  "These elements cannot be satisfied by mere conjecture, guess, or speculation." *Bd. of Trs. of Fire & Police Retiree Health Fund v. Towers, Perrin, Forster & Crosby, Inc.*, 191 S.W.3d 185, 190 (Tex. App. 2005, no pet.) (quoting *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798-99 (Tex. 2004)).

B

Scheef & Stone contends that Taylor has failed to plausibly plead that Scheef & Stone's alleged failure to adequately advise the Breitling Entities regarding their illegal activities was either a breach of its duties or the proximate cause of the Breitling Entities' damages.  Scheef & Stone asserts that "nowhere in the First Amended Complaint does [Taylor] allege that Breitling was unaware of the fraudulent and illegal nature of its activities," "[n]or does [Taylor] allege that, if Scheef & Stone had provided different legal advice, Breitling would have heeded that advice and thereby somehow avoided suffering damages."  Ds. Br. 17.  Scheef & Stone posits that, absent these assertions, Taylor's

allegations are "mere speculation that different legal advice would have resulted in different client behavior," which "is insufficient to plead causation." *Id.*

Taylor responds that Scheef & Stone "conflate[s] the innocent Breitling [E]ntities, who were Defendants' clients," "with Faulkner, who was not," and that Scheef & Stone's causation arguments are "a thinly disguised attempt to backdoor an *in pari delicto* defense by improperly imputing Faulkner's . . . knowledge, intent and conduct to the Breitling [E]ntities." P. Resp. 17.  Regarding his professional negligence claim, Taylor specifically asserts that Scheef & Stone breached its duties to the Breitling Entities by creating a bonus program that assisted Faulkner in using unlicensed securities sales staff to sell unregistered securities; advising Faulkner that his Internet-based securities sales tactics did not constitute "general solicitation"; failing to urge Faulkner to disclose investor fraud claims; lying to regulators, and "acquiesc[ing] in Faulkner's lies to and withholding of relevant documents from regulators[.]" P. Resp. 18.  Relying on *Official Stanford Investors Committee v. Greenberg Traurig, LLP*, 2014 WL 12572881, at *6 (N.D. Tex. Dec. 17, 2014) (Godbey, J.), and *Janvey v. Proskauer Rose LLP*, 2015 WL 11121540, at *6 (N.D. Tex. June 23, 2015) (Godbey, J.), Taylor maintains that "[s]uch allegations are sufficient to state a claim for professional negligence by lawyers who were duty-bound to ensure that their corporate clients were *not* being manipulated by management into violating the law and committing fraud," and that he need not plead that the Breitling Entities "would have heeded [better legal] advice and ceased [their] illicit conduct" because such arguments would cause "the Court to speculate as to causation[.]" P. Resp. 18, 19.  Nevertheless, Taylor contends "[i]t

- 11 -

is certainly plausible that, had Defendants *not* set up the disguised commission structure," or "had Defendants advised Faulkner to cease his Internet-based sales strategy using 'general solicitation,' then Faulkner would not have been able to sell his fraudulent securities in the volume that he did, such that the damages to the entities would have been lessened." *Id.* at 20. Taylor requests "that the Court take judicial notice of the Answers filed by some of the Breitling [E]ntities and their principals in the SEC [civil enforcement] [a]ction," in which certain defendants "asserted 'advice of counsel' (presumably from [Scheef & Stone]) . . . as an affirmative defense to the SEC's claims against them." *Id.* at 19.

C

The court concludes that Taylor's amended complaint fails to plead sufficient facts to support a claim that Scheef & Stone's failure to notify the Breitling Entities of the illegality of their conduct, or Scheef & Stone's alleged assistance in the illegal conduct, constituted a breach of its duties to the Breitling Entities or otherwise proximately caused their damages. As a preliminary matter, to the extent Taylor predicates a breach of duties claim on Scheef & Stone's duty to reveal its clients illegal activities, i.e., its duty to "blow the whistle," such allegations cannot support Taylor's negligence claim because this is "a supposed duty to securities authorities, to investors, or to the public at large, but not to the [Breitling Entities]" as Scheef & Stone's clients. *Reneker v. Offill* (*Reneker II*), 2009 WL 3365616, at *4 (N.D. Tex. Oct. 20, 2009) (Fitzwater, C.J.).[6]

---

[6]Some courts have held that "professionals such as lawyers and accountants do not have a duty to 'blow the whistle' on their clients." *Calcutti v. SBU, Inc.*, 273 F.Supp.2d 488,

Additionally, Taylor's failure to plead that the Breitling Entities were unaware of the illegality of their conduct is fatal to his claim.  As the court has previously explained, "[i]f the [Breitling Entities] knew they were committing—indeed, fully intended to commit—fraud, it is not apparent how [an attorney's] failure to tell them what they already knew could be a negligent breach of a lawyer's duty to the client."  *Reneker II*, 2009 WL 3365616, at *5 (dismissing negligence claim against attorneys where amended complaint failed to allege client's unawareness of nefarious activity and thereby "fail[ed] to allege sufficient operative facts as to the breach of the duties owed . . . to make the negligence claim plausible.").  Thus, by failing to allege that the Breitling Entities were "actually unaware" that their conduct was unlawful, Taylor has failed to plausibly plead a breach of Scheef & Stone's duties to its clients.

Moreover, by failing to allege that the Breitling Entities were unaware of the illegality of their actions, or that they would have followed competent advice, Taylor has failed to plead sufficient facts to support a plausible claim that Scheef & Stone *caused* the Breitling Entities' damages.  If the client "would have ignored [the attorney's] advice no matter how competently provided, the malpractice claim will fail for lack of proximate causation." *Smith*

---

494 (S.D.N.Y. 2003) (collecting cases); *see also Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1124 (5th Cir. 1988) ("an attorney required to declare publicly his or her legal opinion of a client's actions and statements may find it impossible to remain as loyal to the client as legal ethics properly require."), *vacated on other grounds by Fryar v. Abell*, 492 U.S. 914 (1989); *Hays v. Page Perry, LLC*, 26 F.Supp.3d 1311, 1318 (N.D. Ga. 2014) ("Plaintiff fails to identify a single case or statute even intimating that . . . lawyers have a duty to blow the whistle on their clients to regulators.")

*v. O'Donnell*, 288 S.W.3d 417, 422 (Tex. 2009). Taylor merely contends in his response that it is "plausible" that had Scheef & Stone "advised Faulkner to cease" certain questionable or illegal practices, the damages incurred by the Breitling Entities would have been reduced. Am. Compl. 20. But because Taylor points to no factual allegations in his amended complaint that support this proposition, "[i]t is speculative to assume that any change in [Scheef & Stone's] actions would have altered the actions of the [Breitling Entities] themselves." *Reneker II*, 2009 WL 3365616, at *6. Thus even if the court assumes *arguendo* that Scheef & Stone's conduct and advice constituted a "*conceivable* breach" of its duties to the Breitling Entities, Taylor has failed to plead a plausible right to relief because he has not alleged that the Breitling Entities were unaware of the illegality of their actions or that the Breitling Entities would have heeded competent advice. *Id.* at *5.[7]

---

[7]Taylor relies on Judge Godbey's decisions in *Greenberg Traurig, LLP*, 2014 WL 12572881, at *6, and *Proskauer Rose LLP*, 2015 WL 11121540, at *6, for the proposition that allegations that a law firm's "assistance in skirting regulation . . . enabl[ed] the [Breitling] [E]ntities to conduct their business" are sufficient to raise "a reasonable inference that [the law firm's] deficient legal services contributed to the size and scope of the underlying scheme," *Greenberg Traurig, LLP*, 2014 WL 12572881, at *6, and that such allegations plausibly satisfy the causation prong of a professional negligence claim at the dismissal stage. The court disagrees that such allegations would be sufficient to plausibly plead causation in this case. This is because it is entirely possible for "[a] lawyer [to] be negligent and yet cause no harm," and where such a "breach of a duty of care does not cause harm, no valid claim for legal-malpractice exists." *Rogers*, 518 S.W.3d at 400. Thus while an attorney's assistance in skirting regulations may be a *breach* of his duties to the client, it does not necessarily follow—absent sufficient allegations to the contrary—that his assistance *caused* harm to the client. If a client knowingly skirts regulation and intentionally engages in wrongdoing, irrespective of an attorney's advice, it is not clear how the attorney's adequate advice could have avoided or otherwise reduced the harm the client. *See Smith*, 288 S.W.3d at 422 ("[I]f . . . [Faulkner or the Breitling Entities] would have ignored [Scheef & Stone's] advice no matter how competently provided, the malpractice claim will fail for lack

- 14 -

Furthermore, even if the court were to take judicial notice of certain answers to the SEC's complaint in the SEC civil enforcement action, and if it were permissible to accept the contents for their truth, this would not alter the court's conclusions.  The documents on which Taylor seeks to rely merely assert that the claims in the SEC's complaint "are barred, in whole or in part, based on reliance upon the advice of counsel and other professionals." Crude Energy LLC Ans. to SEC Compl. 32.  That this affirmative defense was raised by *one* of several Breitling Entities and *one* principal does not support an inference that the Breitling Entities as a whole were unaware of the illegality of their actions.  And their alleged "reliance upon the advice of counsel" does not refer specifically to Scheef & Stone or provide any factual allegations from which the court could infer that the Breitling Entities were unaware of their illegal conduct.  For these reasons, the court dismisses Taylor's professional negligence claim and declines at this stage to take judicial notice of the assertions of the affirmative defense. *Cf., e.g., Reneker v. Offill*, 2010 WL 1541350, at *6 (N.D. Tex. Apr. 19, 2010) (Fitzwater, C.J.) (declining to take judicial notice of securities

---

of proximate causation.").  For this reason, allegations that a lawyer "assisted" a client's illegal action or provided deficient legal advice that contributed to the client's harm, without more, are insufficient to satisfy the causation prong professional negligence claim.

Importantly, the court's conclusion that Taylor's allegations are deficient based on the failure to plead the Breitling Entities' ignorance to the illegal conduct is separate from any ruling on imputation.  As explained *supra* at § III(C), the court has not imputed Faulkner's knowledge to the Breitling Entities at this stage.  Instead, the court looks to Taylor's pleaded facts to determine whether there is any right to relief as to his professional negligence claims. By failing to plead that the Breitling Entities (*irrespective of Faulkner*) were unaware of the illegal nature of their conduct, Taylor has failed to plausibly plead the breach and causation elements of his claim.

fraud judgments to support proposition that law firm clients "willfully" violated the law because the difference in the proceedings rendered notice "unfair" and a court "cannot accept the individual factual findings of another case as evidence of the truth of the matter").

V

The court now turns to Scheef & Stone's contention that Taylor's claims for participation in tortious conduct violate the Texas anti-fracturing rule.[8]

A

"Under Texas law, . . . '[w]hether allegations against a lawyer, labeled as breach of fiduciary duty, fraud, or some other cause of action, are actually claims for professional

---

[8]Taylor "concedes that recent developments in Texas law as interpreted by the Fifth Circuit arguably call into question his common law aiding and abetting fraud claim," P. Resp. 8-9, and he has since abandoned the claim. The court therefore dismisses any claims predicated on a theory of "aiding and abetting" tortious conduct. *See Rothstein Kass & Co*, 2020 WL 554583, at *5 (explaining that Texas law does not recognize aiding and abetting tortious conduct). Nevertheless, the Supreme Court of Texas does recognize a cause of action for knowing participation in a breach of a fiduciary duty. *See id.* at *6 n.4.

> To establish a claim for knowing participation in breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of a fiduciary relationship.

*D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 216 (5th Cir. 2018) (quoting *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007)). Because defendants have not specifically challenged Taylor's participation in breaches of fiduciary duties claim in their brief supporting the motion to dismiss on any basis other than the anti-fracturing rule, the court declines to dismiss the claim. To the extent Scheef & Stone challenges this claim on other grounds in its reply brief, the court will not consider arguments first raised in a reply brief. *See, e.g., Conceal City, L.L.C. v. Looper L. Enf't, LLC*, 917 F.Supp.2d 611, 623 (N.D. Tex. 2013) (Fitzwater, C.J.).

negligence or something else is a question of law to be determined by the court." *Huerta v. Shein*, 498 Fed. Appx. 422, 427 (5th Cir. 2012) (per curiam) (quoting *Nabors v. McColl*, 2010 WL 255968, at *2 (Tex. App. Jan. 25, 2010, pet. denied) (mem. op.)).  Texas courts apply "[t]he anti-fracturing rule [to] prevent[] plaintiffs from converting what are actually professional negligence claims against an attorney into other claims such as fraud, breach of contract, [or] breach of fiduciary duty[.]" *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App. 2010, pet. denied).  Although the anti-fracturing rule "does not necessarily foreclose the simultaneous pursuit of a negligence-based malpractice claim and a separate breach of fiduciary duty or fraud claim when there is a viable basis for doing so," the plaintiff "must do more than merely reassert the same claim for legal malpractice under an alternative label." *Huerta*, 498 Fed. Appx. at 427 (quoting *Meullion v. Gladden*, 2011 WL 5926676, at *1 (Tex. App. Nov. 29, 2011, no pet.) (mem.op.)).  He "must present a claim that goes beyond what traditionally has been characterized as legal malpractice." *Id.*  (quoting *Duerr v. Brown*, 262 S.W.3d 63, 70 (Tex. App. 2008, no pet.)). In other words, "the pleaded facts [viewed] . . . in the light most favorable to [Taylor]" must demonstrate that the "precise character of his [additional] claims" cannot be reduced to mere negligence. *Id.*

B

Scheef & Stone contends that Taylor's "allegations fail to go beyond merely alleging legal malpractice against Scheef & Stone," and for this reason, that Taylor's participation in breaches of fiduciary duties and fraud claims is an improperly fractured negligence claim. Ds. Br. 8.  Taylor responds that he has made allegations that Scheef & Stone's "conduct rises

- 17 -

to the level of direct participation in Faulkner's fraud and breaches of fiduciary duties owed to the entities," by, *inter alia*, counseling and assisting Faulkner to establish a bonus compensation program that enabled unlicensed securities sales staff to sell securities, filing fraudulent Regulation D statements with the SEC on Breitling's behalf, preparing misleading offering documents, defending the Breitling Entities against investors' fraud claims, lying and/or allowing Faulkner to lie to regulators. P. Resp. 10, 4-5. Taylor maintains that because these allegations may support a claim of negligence or participation in tortious conduct, Texas' anti-fracturing rule does not bar his claims.

## C

### 1

Taylor has "present[ed] a claim that goes beyond what traditionally has been characterized as . . . [negligence]," and therefore his additional claims for participation in breaches of fiduciary duties and fraud are not impermissibly fractured professional negligence claims. *Huerta*, 498 Fed. Appx. at 427. Taylor alleges that, "Faulkner and the other directors and officers of the Breitling Entities . . . owed fiduciary duties to the Breitling Entities" and breached these duties by causing the Breitling Entities "to sell unregistered securities using unregistered sales reps in violation of securities laws and engage in an illegal fraudulent scheme that enabled Faulkner to misappropriate millions of dollars from the Breitling Entities, . . . causing them to incur millions of dollars of increased liabilities, including without limitation professional and administrative liabilities." Am. Compl. 50. Taylor further alleges, *inter alia*, that Scheef & Stone *knew* that Faulkner "directed the

- 18 -

Breitling Entities to operate a securities sales 'boiler room' . . . using unlicensed sales personnel—some with prior documented regulation violations—to engage in 'general solicitation,'" and that Scheef & Stone created the bonus compensation program to continue these practices and to permit "sales staff to disguise that they were receiving transaction-based compensation . . . in violation of U.S. securities laws." P. Resp. 3, 4 (citing various portions of the amended complaint).

These pleaded facts demonstrate that Taylor has not simply recast, and thereby fractured, a professional negligence claim based on what Scheef & Stone allegedly failed to do. Instead, Taylor's allegations support the inference that, at a minimum, Scheef & Stone participated in breaches of fiduciary duties by knowingly providing services to perpetuate Faulkner's breaches. *Compare Floyd v. Hefner*, 556 F.Supp.2d 617, 660 (S.D. Tex. 2008) (declining to apply anti-fracturing rule to participation claim and holding that "[a] reasonable jury could conclude that the Lawyers knowingly participated in the Directors' alleged breach of fiduciary duty" by providing "legal services to consummate [a transaction] and [had] knowledge regarding the 'unlawful purpose' of the [t]ransaction"), *with Reneker v. Offill* (*Reneker I*), 2009 WL 804134, at *9 (N.D. Tex. Mar. 26, 2009) (Fitzwater, C.J.) (holding that anti-fracturing rule barred receiver's direct breach of fiduciary duty claim where gravamen of complaint was simply that counsel failed to adequately advise clients). Because Taylor's allegations present "a viable basis" for "pursuit of a [properly pleaded] negligence-based malpractice claim" based on what Scheef & Stone allegedly failed to do and for "a separate [participation in] breach[es] of fiduciary duty or fraud claim," based on, *inter alia*,

- 19 -

the creation of the bonus program, the court concludes that Taylor's claims do not violate the prohibition on fractured claims.  *Huerta*, 498 Fed. Appx. at 427.

2

Moreover, some courts have held that "'[t]he rule against fracturing a negligence claim [applies] to claims brought directly against the [lawyers] as fiduciaries,' but does not preclude a claim that a lawyer assisted *another* in breaching *his* fiduciary duty."  *In re TOCFHBI, Inc*, 413 B.R. 523, 534 (Bankr. N.D. Tex. 2009) (Jernigan, J.) (quoting *Floyd*, 556 F.Supp.2d at 660).  These courts rely on the proposition that "[w]here supporting evidence exists, Texas law permits a party to bring both a malpractice action based on his lawyer's breach of [his] independent duties and a separate claim for the lawyer's assistance with the breach of another's fiduciary duties."  *Floyd*, 556 F.Supp.2d at 659 (citing *In re Precept Bus. Servs., Inc*., 2004 WL 2074169 (Bankr. N.D. Tex. Aug. 23, 2004) (Felsenthal, J.)) (holding that "[t]he general rule against fracturing a negligence claim does not . . . apply to" plaintiff's claims of participating in "breach of fiduciary duty[.]"); *accord Proskauer Rose LLP*, 2015 WL 11121540, at \*5.  They reason that these claims are not based solely on the lawyer's conduct but on the lawyer's conduct "vis-à-vis . . . other [d]efendants," rendering the participation claim fundamentally separate from that of the direct negligence claim.  *Floyd*, 556 F.Supp.2d at 659.  Thus whether because the participation and negligence claims are *by nature* separate claims or because Taylor's *allegations* render them separate claims, *see, e.g., Rothstein Kass*, 2020 WL 554583, at \*7, the court holds that Texas' anti-fracturing rule does not bar Taylor's participation claims in this case.

- 20 -

For these reasons, the court declines at this stage to dismiss Taylor's claims for participation in tortious conduct based on the anti-fracturing rule. *See, e.g., Mia Reed & Co. v. United Fire & Cas. Co.*, 2012 WL 2499932, at *6 (S.D. Tex. June 27, 2012) (declining to apply anti-fracturing rule to grant Rule 12(b)(6)-based motion to dismiss where defendants did not "establish[] that [plaintiff's] breach of fiduciary duty claim must, as a matter of law, be brought as a negligence claim.").

## VI

The court next addresses Scheef & Stone's contention that Taylor's claim that Scheef & Stone participated in Faulkner's fraudulent scheme must be dismissed for failure to point to any fraudulent conduct with respect to the Breitling Entities.

## A

The elements of common law fraud in Texas are:

> (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result.

*Choe v. Bank of Am., N.A.*, 2013 WL 3196571, at *5 (N.D. Tex. June 25, 2013) (Fitzwater, C. J.) (citations omitted) (quoting *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004)) (Texas law), *aff'd*, 605 Fed. Appx. 316 (5th Cir. 2015).  Under Texas law, "[e]ach party to a fraudulent scheme is responsible for the acts of the others done in furtherance of the fraudulent scheme." *Crisp v. Sw. Bancshares Leasing Co.*, 586 S.W.2d 610, 615 (Tex. Civ. App. 1979, writ ref'd n.r.e.) (citing *Foix v. Moeller*, 159 S.W. 1048,

1052 (Tex. Civ. App. 1913, writ ref'd)).  And "all who participate are liable for the fraud[.]" *Id.* (citation omitted).   A party may also become liable for fraud without making any fraudulent representations where he "allegedly participated in the fraudulent transactions and reaped the benefits."  *In re Arthur Andersen LLP*, 121 S.W.3d 471, 481 (Tex. App. 2003, no pet.).  "[S]tate law fraud claims," including allegations that a party "participat[ed]" in fraud, "are subject to the heightened pleading requirements of Rule 9(b)."  *Halprin v. FDIC*, 2016 WL 5718021, at *3 (W.D. Tex. Sept. 30, 2016) (citing *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550-51 (5th Cir. 2010)).   "Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud."  *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 Fed. Appx. 513 (5th Cir. 2013).  "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Id.* (quoting *Benchmark Elecs.*, 343 F.3d at 724).  More colloquially, plaintiffs must plead the "who, what, when, where, and how" of the fraud.  *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

B

Scheef & Stone contends that Taylor's allegations are insufficient to support a fraud claim because Taylor merely alleges that "Scheef & Stone *failed* to learn or act on information, *failed* to properly investigate the investor and regulator complaints made against Breitling, and *failed* to insist that Breitling disclose the complaints publicly." Ds. Br. 10-11. And to the extent Taylor does allege facts supportive of a fraud claim, Scheef & Stone maintains that the claim must nevertheless be dismissed because Taylor fails to allege that "Scheef & Stone made any misrepresentations *to Breitling* with the intent to induce *Breitling* to act." *Id.* at 11.

Taylor responds that he has sufficiently pleaded that Scheef & Stone "directly engaged in fraud (in concert with Faulkner)" by

> (i) assisting Faulkner to sell his illicit, unregistered securities through the fraudulent [private placement memoranda] that were prepared or "blessed" by Defendants; (ii) filing fraudulent Reg D statements with the SEC on Breitling's behalf that omitted to disclose the illegal commissions being paid to Breitling's unlicensed securities sales staff; and (iii) lying to regulators and otherwise conspiring with Faulkner to cover up and conceal his fraudulent activities.

P. Resp. 9 (footnotes omitted).

C

There are at least two barriers to Taylor's claim. First, as the court has previously explained, "because Texas does not explicitly recognize a cause of action for aiding and abetting fraud, it is not clear that Texas law recognizes a cause of action for 'participation

in fraud' that is separate from a direct claim for fraud or conspiracy." *Rothstein Kass & Co.*, 2020 WL 554583, at \*9; *see also id.* at \*9 n.7 (explaining that "participation in fraud" was initially recognized in the context of claims for aiding-and-abetting fraud—a claim not recognized by Texas law—and conspiracy). And for this reason, "it is questionable whether, to plead a plausible 'joint tortfeasor claim' for fraud, it is sufficient to allege that a third party 'assisted' or 'participated' in another's fraud without adequately pleading that the third party himself engaged in fraudulent conduct with the requisite knowledge and intent." *Id.* at \*9. Taylor's amended complaint merely alleges that Scheef & Stone's "services assisted the fraudulent scheme that enabled Faulkner to fraudulently offer securities to public investors and misappropriate over $32 million" and caused the Breitling Entities to "suffer losses . . ., including without limitation professional and administrative liabilities." Am. Compl. 51. It is dubious whether Taylor's conclusory allegations that Scheef & Stone "assisted" or "participated" in Faulkner's fraudulent scheme are adequate to state a plausible claim for "participation in fraud." And even if Taylor adequately pleaded a direct, independent fraudulent representation or act on the part of Scheef & Stone, Taylor has otherwise failed to "explicitly address[] the elements of fraud," and the court dismisses this claim for this reason alone. *Rothstein Kass & Co.*, 2020 WL 554583, at \*9.

Second, because Taylor, as receiver, "stand[s] in the shoes of [the Breitling Entities]," Taylor may only assert a fraud claim against Scheef & Stone predicated on Scheef & Stone's fraudulent conduct directed at the *Breitling Entities*—not investors or regulators. *See Reneker I*, 2009 WL 804134, at \*5 (citing *Hymel v. FDIC*, 925 F.2d 881, 883 (5th Cir. 1991))

- 24 -

(holding that Article III standing requirements precluded receiver from bringing claims belonging to investors as opposed to those belonging directly to the receivership entity). Notably, Taylor fails to allege that the Breitling Entities relied on any specific representation or omission made by Scheef & Stone.[9] Thus even if the court assumes *arguendo* that Taylor alleges with sufficient specificity that Scheef & Stone "engaged in fraudulent conduct with the requisite knowledge and intent," with respect to investors and regulators, Taylor has failed to demonstrate how Scheef & Stone engaged in fraud with respect to the Breitling Entities. For example, materially misleading offering documents disseminated to investors may induce *investors* to rely to their detriment on the fraudulent information therein. Likewise, Taylor's filing a fraudulent Regulation D statement with the SEC may evidence an alleged material misstatement to *regulators* with the intent that *regulators*—not the Breitling Entities—rely on the misleading information. Thus although several allegations may suggest that Scheef & Stone acted with intent to defraud others, Taylor has failed to plausibly allege that Scheef & Stone made any misrepresentations to the *Breitling Entities*

---

[9]To the extent Taylor intends to assert a "participation in fraud" claim predicated on a theory that Scheef & Stone lied to the Breitling Entities to permit Faulkner to illegally raise funds and increase the Breitling Entities' liabilities to creditors, and perhaps obtain some benefit in the process, Taylor has failed to "connect the dots" of this theory by pointing to statements or omissions made to the Breitling Entities on which Scheef & Stone intended they rely to their detriment. Indeed, Taylor mentions the Breitling Entities' reliance with respect to Scheef & Stone's services *once* in the entire 55 page amended complaint. In this singular instance, Taylor asserts that "[t]he Breitling Entities relied on Scheef & Stone to provide legal representation with the degree of care, skill, and competence that attorneys of reasonable skill and competence would have exercised under similar circumstances." Am. Compl. 4. Such generalized allegations are insufficient to support a plausible fraud claim.

or otherwise acted with intent to defraud *them*.  For this reason, Taylor's "participation in fraud" claim must be dismissed.

VII

The court now considers Scheef & Stone's contention that the statute of repose extinguishes Taylor's fraudulent conveyance claim.

A

The Texas Uniform Fraudulent Transfer Act ("TUFTA") contains this statute of repose:

> Except as provided by Subsection (b) of this section, a cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought: (1) under Section 24.005(a)(1) of this code, within four years after the transfer was made or the obligation was incurred or, *if later*, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant; (2) under Section 24.005(a)(2) or 24.006(a) of this code, within four years after the transfer was made or the obligation was incurred; or (3) under Section 24.006(b) of this code, within one year after the transfer was made.

Tex. Bus. & Com. Code Ann. § 24.010 (West 2018) (emphasis added).  Unlike a statute of limitations, a statute of repose does not only "procedurally bar an untimely claim, it substantively 'extinguishes' the cause of action."  *Nathan v. Whittington*, 408 S.W.3d 870, 874 (Tex. 2013).  "A statute of repose provides an absolute affirmative defense, and the defendant bears the burden of proving all factual requisites to the statute's application."  *Salgado v. Great Dane Trailers*, 2012 WL 401484, at *3 (S.D. Tex. Feb. 6, 2012) (citing *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996)) (holding that defendant bore

- 26 -

burden on statute of repose defense at summary judgment); *see also Hagan v. Mazda Motor Co. of Am., Inc.*, 690 Fed. Appx. 242, 243 (5th Cir. 2017) (per curiam) (holding that, "[u]nder Texas law, a defendant moving for summary judgment on an affirmative defense must irrefutably establish its elements.").

Nevertheless, § 24.010(a)(1) also contains a "discovery rule" savings provision by which a "fraudulent-transfer claim must be filed within one year after the fraudulent nature of the transfer is discovered or reasonably could have been discovered." *Janvey v. Democratic Senatorial Campaign Committee, Inc.*, 712 F.3d 185, 195 (5th Cir. 2013). "[T]he [Texas] legislature, through the enactment of TUFTA's statute of repose provision, has already determined a type of discovery rule applies to TUFTA claims," that is, "the discovery rule is explicitly available by statute[.]" *Janvey v. Romero*, 817 F.3d 184, 189 n.4 (5th Cir. 2016). Thus even when the four-year statute of repose has passed, a plaintiff may nevertheless bring a fraudulent conveyance claim under § 24.010(a)(1) so long as the fraudulent nature of the transfer was not reasonably discoverable and the claim is brought within one year of such discovery.

B

Scheef & Stone contends that Taylor's fraudulent transfer claim is barred because it expired pursuant to the four-year statute of repose, and the "one-year saving provision" does not apply. Because Taylor alleges that the Breitling Entities "made transfers totaling at least $331,637.48 to Scheef & Stone" between "December 1, 2013 and April 1, 2014," Scheef & Stone maintains that Taylor's fraudulent conveyance claim "expired no later than April 1,

2018 unless the time for filing was tolled in some way—either by the August 2017 and September 2017 Orders or by the one-year saving provision in § 24.010(a)(1)." Ds. Br. 22. Scheef & Stone maintains that those orders only tolled any applicable statute of *limitations*, not TUFTA's statute of *repose*, and that § 24.010(a)(1) does not save Taylor's claim because Taylor was aware of the alleged fraudulent nature of the transfer "no later than the time the September 2017 Order was entered" based on the SEC's complaint in the civil enforcement action, the responsive pleadings of the Breitling Entities' officers (in which all pleaded "advice of counsel" as affirmative defenses), and Taylor's declaration in support of the SEC's opposition to an extension of time sought by Faulkner. *Id.* at 24.

Taylor responds that he specifically "plead[ed] that he did not discover and could not with the exercise of reasonable diligence have discovered until more recently, [Scheef & Stone's] connection to the Breitling fraudulent scheme and the true nature of the injury suffered" as well as that Scheef & Stone's "wrongful acts were inherently undiscoverable." P. Resp. 22. He maintains that these pleaded facts are sufficient to avoid dismissal because whether a "plaintiff knew or should have known of an injury is . . . a question of fact" not to be decided at the dismissal stage. *Id.*

C

Because the court cannot conclude from the face of the amended complaint that the discovery rule does not apply to Taylor's claim, the court declines to dismiss Taylor's TUFTA claim. Here, Taylor explicitly pleads that he "did not discover and could not with the exercise of reasonable diligence have discovered until more recently, . . . the Breitling

- 28 -

fraudulent scheme and the true nature of the injury suffered" and that Scheef & Stone's "wrongful acts were inherently undiscoverable." Am. Compl. 48. He further alleges that he was unable to bring this claim until the Breitling Entities "were 'freed of [Faulkner's] coercion by the court's appointment of [the] Receiver.'" *Id.* at 49 (quoting *Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d at 190). The court concludes that the complaint's allegations are sufficient to avoid dismissal at the Rule 12(b)(6) stage. *See, e.g., Janvey v. Bogar*, 2014 WL 4907074, at *3 (N.D. Tex. Sept. 25, 2014) (Koenig, J.) (holding that discovery rule precluded Rule 12(b)(6) dismissal where plaintiffs pleaded that "they were only able to discover the fraudulent nature of the transfers after [the controlling principal] and others were removed from their posts and after a time-consuming and extensive review of documents.")

VIII

The court now turns to Scheef & Stone's contention that the fraudulent conveyance claim must be dismissed because Taylor has failed to allege facts evidencing fraudulent intent.

A

To establish a claim under § 24.005 of TUFTA, a plaintiff must prove that "(1) []he is a 'creditor' with a claim against a 'debtor'; (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff." *Dontos v. Vendomation NZ Ltd.*, 582 Fed. Appx. 338, 344 (5th Cir. 2014) (per curiam) (citing *Nwokedi v. Unlimited Restoration Specialists,*

- 29 -

*Inc.*, 428 S.W.3d 191, 203-05 (Tex. App. 2013, pet. denied)).  Fraudulent conveyance claims under § 24.005(a)(1) require actual intent and are likely subject to Rule 9(b).  *See Clapper v. Am. Realty Inv'rs, Inc.*, 2018 WL 3868703, at *8 (N.D. Tex. Aug. 14, 2018) (Fitzwater, J.) (explaining that, although an open question in the Fifth Circuit, several members of this court have applied the enhanced pleading requirements of Rule 9(b) where plaintiffs seek to establish the actual intent of the debtor), *recons. denied*, 2018 WL 6011182 (N.D. Tex. Nov. 16, 2018).

B

Scheef & Stone contends that Taylor's allegations are "woefully inadequate to meet the Rule 9(b) pleading standard" for a fraudulent conveyance claim.  Ds. Br. 20.  It asserts that Taylor has failed to plead even a singular "badge of fraud" and "has not alleged facts to show that Breitling, whether acting through Faulkner or anyone else, acted with fraudulent intent when paying Scheef & Stone for legal services."  *Id.* at 21.

Taylor responds that the amended complaint "lays out Faulkner's actual intent to defraud creditors using the Breitling [E]ntities in great detail and describes how Faulkner used [Scheef & Stone's] assistance to effectuate said fraud."  P. Resp. 23-24 (footnote omitted).  He maintains that the amended complaint "specifically alleges at least three of the enumerated 'badges of fraud[,]' including (1) suits or threats of suits against the Breitling [E]ntities by defrauded investors; (2) Faulkner's looting of the Breitling [E]ntities; and (3) the insolvency of the Breitling [E]ntities resulting in the present receivership."  P. Resp. 24 (footnotes omitted).  Taylor also contends that "actual intent to defraud creditors is ordinarily

a fact question" that should not be decided on a motion to dismiss. *Id.*

C

Taylor has not adequately alleged fraudulent intent with respect to payments to Scheef & Stone. Although Taylor alleges that "Faulkner caused BOG and BECC to make transfers totaling at least $331,637.48 between December 1, 2013 and April 1, 2014 with actual intent to hinder, delay or defraud creditors of BOG and BECC," P. Resp. 23, such generalized allegations are insufficient under Rule 9(b) to plead actual intent with regard to the specific transaction in question.

Section 24.005(b) of TUFTA lists several factors—commonly known as the "badges of fraud"—that may be considered in determining the presence of actual intent. *In re Soza*, 542 F.3d 1060, 1066 (5th Cir. 2008).[10] "Not all, or even a majority of the 'badges of fraud'

---

[10]Section 24.005(b) provides:

> In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether:
>
> > (1) the transfer or obligation was to an insider;
> > (2) the debtor retained possession or control of the property transferred after the transfer;
> > (3) the transfer or obligation was concealed;
> > (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> > (5) the transfer was of substantially all the debtor's assets;
> > (6) the debtor absconded;
> > (7) the debtor removed or concealed assets;
> > (8) the value of the consideration received by the

must exist to find actual fraud," but when "several of these indicia of fraud are found, they

can be a proper basis for an inference of fraud."  *Id.* at 1067 (citing *Roland v. United States*,

838 F.2d 1400, 1402-03 (5th Cir. 1988)).  And while "[p]roof of four to five badges of fraud

is sufficient to establish actual fraud," *In re Boyd*, 2012 WL 5199141, at *9 (Bankr. W.D.

Tex. Oct. 22, 2012), fewer may be insufficient to establish the existence of fraudulent intent,

*see In re Edwards*, 537 B.R. 797, 808 (Bankr. S.D. Tex. 2015).

In this case, Taylor has failed to *explicitly* plead any badges of fraud with the requisite

particularity.  For this reason, there are insufficient factual allegations to give rise to a

reasonable inference of fraud with regard to Taylor's fraudulent transfer claim.  *See In re:*

*Brown Med. Ctr., Inc.*, 552 B.R. 165, 172 (S.D. Tex. 2016) (holding that plaintiff "failed to

state with particularity a claim under TUFTA § 24.005(a)(1)" where plaintiff did not address

the badges of fraud); *cf., e.g., Taylor v. Frishberg*, 2012 WL 868718, at *7 (S.D. Tex. Mar.

13, 2012) (finding pleadings sufficient for § 24.005(a)(1) claim where "Receiver's

allegations address[ed] several of the factors identified in [§] 24.005(b).").  Because Taylor

---

debtor was reasonably equivalent to the value of
the asset transferred or the amount of the
obligation incurred;
(9) the debtor was insolvent or became insolvent
shortly after the transfer was made or the
obligation was incurred;
(10) the transfer occurred shortly before or shortly
after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of
the business to a lienor who transferred the assets
to an insider of the debtor.

has not adequately pleaded "actual intent" with regard to the specific transfer of funds to Scheef & Stone, the court dismisses Taylor's fraudulent transfer claim.

Moreover, to the extent Taylor contends that he *has* pleaded several badges of fraud with the requisite specificity in the facts section of his amended complaint, the court disagrees. As to the Breitling Entities' insolvency, Taylor fails to allege that they were insolvent at the time the transfers were made or shortly thereafter. Indeed, the only explicit mention of insolvency or bankruptcy in the amended complaint is Scheef & Stone's question to Faulkner in March 2015, almost one year after the transfers-in-question were made, asking, "[A]re [y'all] insolvent?" Am. Compl. 41. To the extent Taylor proffers his allegations regarding the increase in over $100 million liabilities as allegations of insolvency, he has failed to allege that these liabilities resulted in insolvency as defined by Tex. Bus. & Com. Code § 24.003(a), and has failed to allege when these liabilities were incurred or when the Breitling Entities' assets began to exceed their liabilities. *Cf. G.M. Houser, Inc. v. Rodgers*, 204 S.W.3d 836, 848-49 (Tex. App. 2006, no pet.) (finding that debtor "became insolvent, or was insolvent *at the time of transfer* as defined by Tex. Bus. & Com. Code § 24.003(a)" (emphasis added)). And Faulkner's "looting" of the company is not particularized to any specific badge of fraud and fails to demonstrate that Faulkner either retained possession of the specific funds in question or otherwise concealed them. On the other hand, the facts section of Taylor's amended complaint does reference several suits and threats of suits. Nevertheless, because allegations supporting a singular badge of fraud are insufficient to infer actual intent, the court dismisses this claim. *See Williams v. Hous. Plants*

- 33 -

*& Garden World, Inc.*, 508 B.R. 11, 18 (S.D. Tex. 2014) (Rosenthal, J.) ("As a matter of law, a finding of fraudulent intent cannot properly be inferred from the existence of just one 'badge of fraud.'" (quoting *In re SMTC Mfg. of Tex.*, 421 B.R. 251, 300 (Bankr. W.D. Tex. 2009))).

## IX

The court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead, unless it is clear that the defects are incurable or the plaintiff advises the court that he is unwilling or unable to amend in a manner that will avoid dismissal.  *See In re Am. Airlines, Inc., Priv. Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (citation omitted)).  Here, Taylor explicitly moves in the alternative for leave to amend his complaint, *see* P. Resp. 25, and it is not clear that the defects in all the claims being dismissed today are incurable.  The court therefore grants Taylor leave to replead.

- 34 -

\*   \*   \*

For the reasons explained, the court grants in part and denies in part Scheef & Stone's motion to dismiss, and it grants Taylor leave to file an amended complaint within 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

July 31, 2020.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 35 -