# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| CHRISTOPHER A. FAULKNER, BREITLING ENERGY CORPORATION, JEREM S. WAGER, JUDSON F. ("RICK") HOOVER, PARKER A. HALLAM, JOSEPH SIMO, DUSTIN MICHAEL MILLER RODRIGUEZ, BETH C. HANDKINS, GILBERT STEEDLEY, BREITLING OIL & GAS CORPORATION, CRUDE ENERGY, LLC, PATRIOT ENERGY, INC. | § § § § § § § § § § § | Civil Action No. 3:16-cv-1735-D |
| Defendants. | § § | |
| And | § | |
| TAMRA M. FREEDMAN and JETMIR AHMEDI, | § § | |
| Relief Defendants. | § § § | |
| THOMAS L. TAYLOR III, solely in his capacity as Court-appointed temporary receiver for Breitling Energy Corporation, et al., | § § § § | |
| Plaintiff, v. | § § § § | Civil Action No. 3:19-cv-02602-D |
| SCHEEF & STONE, LLP, ROGER CRABB, and MITCH LITTLE, | § § § § | |
| Defendants. | § | |

### RECEIVER'S UNOPPOSED MOTION TO APPROVE PROPOSED SETTLEMENT WITH SCHEEF & STONE DEFENDANTS AND BRIEF IN SUPPORT

COME NOW Plaintiff Thomas L. Taylor III ("Receiver"), solely in his capacity as

1

temporary Receiver for the Breitling group of companies,[1] and moves the Court to approve the settlement (the "Scheef & Stone Settlement") among and between the Receiver and Defendants Scheef & Stone, LLP, Roger Crabb, and Mitch Little (collectively "Defendants"). The Scheef & Stone Settlement is attached hereto as **Exhibit 1.**

The Receiver requests that this Court find that the Scheef & Stone Settlement is fair, equitable, and in the best interests of the Receivership Estate and all its claimants, and to approve the Scheef & Stone Settlement. In support thereof, the Receiver respectfully states the following:

## I. INTRODUCTION

1. As part of his lengthy and thorough investigation of the Breitling fraud scheme, and after having filed and litigated claims against Defendants in the lawsuit styled *Taylor v. Scheef & Stone, LLP, et al.*, Civil Action No. 3:19-cv-02602-D, in the Northern District of Texas – Dallas Division (the "Scheef & Stone Action") over the course of the last year, the Receiver has reached a settlement with Defendants, who provided legal representation to the Breitling entities for several years. Under the agreement, once approved and effective, Scheef & Stone's insurance carrier, on behalf of Scheef & Stone, has agreed to pay **$3.0 million** to the Receiver for distribution to Breitling investors whose claims have been allowed by the Receiver. In return, Defendants seek a release of all claims that have been asserted or which could have been asserted against them by the Receiver in the Scheef & Stone Action or otherwise.

2. As discussed further herein, the Scheef & Stone Settlement is the result of mediation with the Hon. Judge Jeff Kaplan (retired) and is largely driven by available insurance, as the Receiver recognizes that Defendants' largest potentially collectible asset is their (depleting)

---

[1] Specifically, the Receiver files this Motion in his capacity as court-appointed Receiver for Breitling Oil & Gas Corporation ("BOG"), Breitling Royalties Corporation ("BRC"), Breitling Energy Corporation ("BECC"), and Crude Energy, LLC ("Crude Energy"), Crude Royalties, LLC ("Crude Royalties") and Patriot Energy, Inc. ("Patriot").

malpractice insurance policy.

## II. BACKGROUND

### A. Authority of the Receiver

3. On June 24, 2016, the United States Securities & Exchange Commission ("SEC") filed its enforcement Complaint against several of the Breitling entities as well as several individuals, including Breitling CEO and mastermind of the Breitling fraud, Christopher Faulkner ("Faulkner").[2] On August 14, 2017 the Court appointed Plaintiff Thomas L. Taylor III as temporary Receiver for Breitling Oil and Gas Corporation ("BOG") and Breitling Energy Corporation ("BECC"). *See* SEC Action, ECF No. 108, as amended by Order, ECF No. 142, as amended by First Amended Order Appointing Receiver, ECF No. 320, as amended by Second Amended Order Appointing Receiver, ECF No. 418 (collectively referred to as the "Receivership Order").[3] Pursuant to the Receivership Order, the Receiver currently serves as temporary receiver for the estates of Faulkner, BOG, BECC, Breitling Royalties Corporation ("BRC"), Crude Energy, LLC ("Crude Energy"), Crude Royalties, LLC ("Crude Royalties") and Patriot Energy, Inc. ("Patriot"), Breitling Ventures Corporation, Breitling Holdings Corporation, Breitling Operating Corporation, Inwood Investments, Inc. and Grand Mesa Investments, Inc. (collectively, excluding Faulkner, the "Receivership Entities"). Receivership Order at ¶2.

4. The Receiver has been specifically appointed as receiver for and over the "Receivership Assets", *id.* at ¶2, which includes "all assets—in any form or of any kind whatsoever—owned, controlled, managed, or possessed by…, directly or indirectly," Faulkner and the Receivership Entities. *Id.* The Receivership Order also specifically authorizes and empowers the Receiver to investigate and prosecute claims "in his discretion" in order to recover funds for the Receivership

---

[2] *SEC v. Faulkner et al.*, Case No. 3:16-CV-1735-D (N.D. Tex. 2016) (the "SEC Action").
[3] Unless otherwise specified, citations to the Receivership Order refer to pages and paragraphs in ECF No. 418 in the SEC Action.

estate. *Id.*, at ¶¶ 42-43.

5. Accordingly, and following his own investigation, which included interviews of witnesses, review of thousands of pages of Breitling records and analysis of the facts surrounding certain parties that may have assisted or participated in the Breitling fraud, on July 12, 2019 the Receiver filed his Unopposed Motion for Leave to Engage Litigation Counsel on a Contingency Fee Basis [ECF No. 456] in order to retain the undersigned counsel ("Litigation Counsel") to prosecute claims in Ancillary Proceedings against Rothstein Kass and Brian Matlock, as well as to investigate and prosecute claims against any other potentially liable third parties involved in the Breitling fraud. The Court granted said Motion via its Order dated July 15, 2019 [ECF No. 457] (the "Litigation Counsel Retention Order").

6. Thereafter, and based on information and evidence the Receiver had gathered up until that time reflecting Defendants' potential involvement in the Breitling fraud, on August 30, 2019 the Receiver filed his Motion for Leave to Commence Ancillary Litigation against Scheef & Stone [SEC Action, ECF No. 477], which the Court granted on September 3, 2019 [*id.*, ECF No. 478]. The Receiver thereafter shared with Litigation Counsel the evidence regarding Scheef & Stone that he had gathered and, following Litigation Counsel's review of said materials and further discussions with the Receiver concerning the facts of the potential claims against Scheef & Stone, on October 24, 2019 the Receiver engaged Litigation Counsel on a 30% contingency fee basis to further investigate and prosecute potential litigation claims against Defendants.

**B.     *The Investigation of Claims Against Scheef & Stone Defendants***

7. Based on the preliminary evidence provided to Litigation Counsel by the Receiver concerning Scheef & Stone's legal representation of the Breitling entities, which evidence Litigation Counsel found sufficient to warrant the filing of a Complaint, on behalf of the Receiver

Litigation Counsel filed the Original Complaint against Defendants on November 1, 2019 [Scheef & Stone Action, ECF No. 1].  After said filing, Litigation Counsel then spent hundreds of hours over a roughly two month period performing a detailed review and analysis of all of the paper and electronic records that Defendants had previously produced to the Receiver, including the review of 5 years of (at times almost daily) e-mail communications between Defendants and Faulkner and other individuals at Breitling.  Based on Litigation Counsel's comprehensive review of Defendants' documents and communications, Litigation Counsel prepared and filed the very detailed, 54-page Receiver's First Amended Complaint against Defendants on December 18, 2019 [Scheef & Stone Action, ECF No. 7] (the "Amended Complaint").

8.      The investigation and prosecution of the Receiver's claims against Defendants necessarily required Litigation Counsel to, on the front end, spend hundreds of hours also investigating and understanding the background and history of the complex web of the Breitling companies, the financial transactions, securities offering materials, interrelationships and dealings between and among the various Breitling entities and the investors that invested with the Breitling entities, and the complex facts relating to Faulkner's fraud scheme and how it was perpetrated through the various Breitling entities.  Accordingly, as part of their investigation of the claims against Defendants in order to prepare the Amended Complaint, Litigation Counsel also reviewed voluminous documents, emails, and deposition transcripts and SEC administrative testimony obtained in the SEC Action as well as the Receiver's interviews and depositions of various former Breitling employees.

9.      Without a comprehensive investigation and understanding of this complex background, it would not have been possible to formulate or litigate viable claims against Defendants.

10. In summary, the Receiver and Litigation Counsel conducted a thorough analysis of, and litigated, a series of claims against Defendants considering:

   a. claims available under both state and federal law;

   b. the viability of those claims considering the facts underlying Defendants' role as counsel for Breitling and this Court's previous rulings; and

   c. the success of similar claims in other securities fraud scheme cases, both in the Fifth Circuit and elsewhere.

### C. The Scheef & Stone Action

11. As this Court is aware and as described above, the Receiver commenced the litigation against Defendants in the Scheef & Stone Action on November 1, 2019, and then filed the Amended Complaint against Defendants on December 18, 2019. The Amended Complaint asserted claims against Defendants for negligence, participation in breaches of fiduciary duties, aiding and abetting a fraudulent scheme, and fraudulent transfer liability.

12. On February 28, 2020 the Defendants filed a Motion to Dismiss the Receiver's Amended Complaint in its entirety. Scheef & Stone Action, ECF Nos. 10-11. The Receiver filed his Response to Defendants' Motion to Dismiss on May 1, 2020 [*id.*, ECF No. 19], and Defendants filed their Reply in support of their Motion to Dismiss on June 1, 2020 [*id.*, ECF No. 20].

13. By its Memorandum Opinion and Order dated July 31, 2020 (Scheef & Stone Action, ECF No. 21), the Court granted in part and denied in part Defendants' Motion to Dismiss, denying Defendants' motion with respect to the Receiver's participation in breach of fiduciary duty claim, but granting it with respect to the Receiver's other claims. However, the Court granted the Receiver's motion for leave to amend to cure any deficiencies in his pleading of, e.g., the negligence claim. As a result, and based on new evidence discovered during the discovery phase of the Receiver's related lawsuit against Rothstein Kass, which case was proceeding simultaneously with the Scheef & Stone Action, the Receiver prepared and filed his Second Amended Complaint on August 28, 2020

[ECF No. 22]. Defendants indicated that they intended to file a Motion to Dismiss the Second Amended Complaint, but the parties agreed to attend a mediation first.

### D.  *Mediation*

14. Mediation was held with Hon. Judge Jeff Kaplan on October 13, 2020. Prior to the mediation Defendants provided the Receiver with Scheef & Stone's applicable insurance policy information, which revealed that Defendants had limited insurance coverage, consisting of one $5 million malpractice liability policy which was a depleting or "wasting" policy, and which had already been depleted below the initial policy limits by legal defense costs.

15. As a result of the parties' good faith negotiations and with the help of Judge Kaplan, the parties were able to reach agreement during the mediation, resulting in the Scheef & Stone Settlement.

16. Without the efforts of the Receiver and Litigation Counsel in investigating and prosecuting these claims as part of the Receiver's overall effort to recover money for the benefit of the victims of the Breitling fraud, the settlement could never have been achieved, and the Scheef & Stone Action would have lasted for months if not years with an uncertain outcome and at great expense to both parties and resulting in the further depletion of the Scheef & Stone insurance policy.

17. Since the settlement was reached, the Parties have spent considerable time and effort drafting, revising, and negotiating the form and terms of the Scheef & Stone Settlement Agreement, for which the Receiver now seeks approval.

### F.  *The Scheef & Stone  Settlement*

18. The proposed Scheef & Stone Settlement is the result of over a year of litigation and hundreds of hours of investigative work by the Receiver and Litigation Counsel, and was

negotiated and entered into as a result of arm's-length negotiation.

19. The essential terms of the Scheef & Stone Settlement Agreement are that:

a) Upon approval of the settlement by the Court, Scheef & Stone (through its insurance carrier) will pay $3 million, which will be deposited with the Receiver as required pursuant to the Settlement Agreement;

b) The Receiver on behalf of the Receivership Estate (including the Breitling entities), will fully release the Defendants from all claims asserted, or which could have been asserted, in the Scheef & Stone Action;

c) The Receiver will dismiss the Scheef & Stone Action with prejudice with each party bearing its own costs and attorneys' fees.

Copies of the Scheef & Stone Settlement Agreement, this Motion, and other supporting papers may be obtained from the Court's docket, and will also be available on the website of the Receiver (www.breitlingreceivership.com).

20. For the reasons described herein, the Scheef & Stone Settlement is fair, equitable, reasonable, and in the interests of the Receivership Estate and all those who would claim substantive rights to distribution of its assets.

21. The Receiver and Litigation Counsel are confident that their investigation of Scheef & Stone's activities related to Breitling and the litigation of the Scheef & Stone Action have been thorough. The Receiver and Litigation Counsel are likewise confident that they have sufficient information to enter into and endorse the Scheef & Stone Settlement. As discussed in more detail below, the Receiver and Litigation Counsel are also confident that the Scheef & Stone Settlement is fair and reasonable taking into consideration not only the merits of the claims, but also the risks, uncertainties, and expenses associated with litigation as well as, most importantly, the limited amounts of available insurance and its depleting nature. Therefore, the Receiver and Litigation Counsel believe that the Scheef & Stone Settlement is in the best interests of the Breitling Receivership Estate and the Breitling investors and should be approved by the Court.

22. All Breitling investors have been given notice of the Receivership and the Receiver's plan of distribution which was approved by this Court on April 28, 2020 [SEC Action, ECF No. 542], and the Receiver intends to distribute the net proceeds from the Scheef & Stone Settlement to the Breitling investors pursuant to the approved plan of distribution.

### III.  REQUEST FOR APPROVAL OF THE SCHEEF & STONE SETTLEMENT

#### A. *Legal Standards*

23. "'[T]he district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.'" *SEC v. Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013) (quoting *SEC v. Safety Fin. Serv.*, 674 F.2d 368, 372-73 (5th Cir. 1982)); *see also Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883 (5th Cir. 2019). "These powers include the court's 'inherent equitable authority to issue a variety of "ancillary relief" measures in actions brought by the SEC to enforce the federal securities laws.'" *Kaleta* at 362 (quoting *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980)). "[N]o federal rules prescribe a particular standard for approving settlements in the context of an equity receivership; instead, a district court has wide discretion to determine what relief is appropriate." *SEC v. Kaleta*, 2012 WL 401069, at *4 (S.D. Tex. Feb. 7, 2012) (quoting *Gordon v. Dadante*, 336 F. App'x 540, 549 (6th Cir. 2009), *aff'd*, 530 F. App'x 360 (5th Cir. 2013). Congress enacted a "loose scheme" for federal equity receivers "on purpose" and "wished to expand the reach and power of federal equity receivers, especially in the context of consolidation." *Janvey v. Alguire*, No. 3:09-cv-00724, slip op. at 31, 34 (N.D. Tex. July 30, 2014).

24. Moreover, "courts have consistently held that Congress intended for federal equity receivers to be utilized in situations involving federal securities laws, like the present receivership," and in such cases for the court to act as a court in equity for the benefit of defrauded

investors. *See id.* at 35 (internal quotation marks omitted); *see also* 15 U.S.C. § 80a-41(d). "Now . . . the corporations created and initially controlled by [Faulkner] are controlled by a receiver whose only object is to maximize the value of the corporations for the benefit of their investors and any creditors." *Janvey v. Alguire*, slip op. at 44 (quoting *Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 191 (5th Cir. 2013) (quoting *Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir. 1995)).

25. The Receivership Order in the SEC Action closely reflects and furthers all of the above objectives, directing the Receiver to prosecute, defend, and compromise actions in order to maximize timely distributions to claimants.

26. The ability to compromise claims is critical to this Receivership. Courts have long emphasized that public policy favors settlement. *See, e.g.*, *Lydondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 297 n.43 (5th Cir. 2010). That is especially true here, where the victims of the Breitling fraud scheme await recovery, further costs would come directly out of the Receivership Estate, and the Scheef & Stone Settlement would allow the Receiver to make a significant distribution.

27. In approving Receivership settlements, this Court and other district courts in this Circuit have also looked to factors such as: (1) the value of the proposed settlement; (2) the value and merits of the receiver's potential claims; (3) the risk that litigation would dissipate the receivership assets; (4) the complexity and costs of future litigation; (5) the implications of any satisfaction of an award on other claimants; (6) the value and merits of any foreclosed parties' potential claims; and (7) other equities incident to the situation. *Kaleta*, 2012 WL 401069, at *4 (citations omitted). The Receiver addresses each of these factors below.

B.       *The Scheef & Stone Settlement Satisfies the Factors for Settlement Approval*

      (1)       *Value of the Proposed Settlement*

28.     The $3 million payment in the Scheef & Stone Settlement is substantial given the amount of available insurance and the depleting nature of the applicable insurance policy. "A proposed settlement need not obtain the largest conceivable recovery . . . to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010). In the absence of evidence otherwise, a district court may conclude that a proposed settlement amount is sufficient. *Kaleta*, 2012 WL 401069, at *4. Moreover, no federal rules prescribe a particular standard for approving settlements in the context of an equity receivership; instead, a district court has wide discretion to determine what relief is appropriate. *Gordon*, 336 F. App'x at 549. The value of the Scheef & Stone Settlement to the Receivership Estate and the Breitling victims, when taken in context, is therefore significant.

      (2)       *Value and Merits of the Receiver's Claims*

29.     The Receiver and Litigation Counsel of course believe that the claims filed against Defendants in the Scheef & Stone Action are meritorious and would be successful. However, they are not without substantial risk and uncertainty. Indeed, more than half of the original case was dismissed by this Court pursuant to its Memorandum Opinion and Order regarding Defendants' Motion to Dismiss, and Defendants stated their intention to file a second Motion to Dismiss the Receiver's Second Amended Complaint. Moreover, the Receiver's ability to collect the maximum value of a judgment from Scheef & Stone is virtually non-existent given the nature of said firm's depleting insurance policy. Indeed, if the Receiver had litigated the Scheef & Stone Action to trial, it is highly likely that the insurance policy would have been depleted to $4 million or even less. As such, the Receiver considers that through this settlement he, in effect, recovered 75% of

the available insurance proceeds that would have been available had he litigated the case to trial (i) a year earlier and (ii) without having to incur the expense of discovery, depositions and expert witnesses.

30. Moreover, the case was not without risk and uncertainty. Defendants deny any liability to the Receiver and have vigorously disputed the validity of the remaining Receiver claims asserted in the Scheef & Stone Action. Among others, the following issues are hotly contested and promise months (if not years) of uncertain litigation:

    a. Whether Defendants had sufficient knowledge to meet the standards for the Receiver's claims for knowing participation in breaches of fiduciary duty;

    b. Whether the Receiver could satisfy the applicable breach of duty and causation requirements for a negligence claim;

    c. Whether the Receiver has valid, supportable damage models; and

    d. Most importantly, whether, even after a successful judgment in the Scheef & Stone Action (and affirmance of such judgment on appeal), the Receiver would be able to collect any more from Scheef & Stone than the Scheef & Stone Settlement already offers.

31. For these and other reasons, but for the Scheef & Stone Settlement the Scheef & Stone Action would be vigorously defended by Defendants, its prosecution would be expensive and protracted, and the ultimate outcome of such litigation would be uncertain. In light of these issues, the Receiver and Litigation Counsel believe that the Scheef & Stone Settlement reflects a fair and reasonable compromise between the parties that is in the best interests of the Receivership Estate.

### *(3)    The Risk that Litigation Would Dissipate Receivership Assets*

32.    Plaintiffs believe that litigation against Defendants would most likely go on for at least an additional year if not longer, with no guarantee of a recovery.  While Litigation Counsel have entered into a contingent fee arrangement with the Receiver to prosecute the claims, the Receiver is paid by the hour and is involved in overseeing the litigation and coordinating strategy with the overall Breitling Receivership case and other litigation.  The Scheef & Stone Settlement avoids further expense associated with the prosecution of the Scheef & Stone Action and continued monitoring and oversight of the case by the Receiver.

33.    Furthermore, as part of the fee agreement between the Receiver and Litigation Counsel, the Receiver agreed that he would fund or reimburse all expenses associated with the Scheef & Stone Action, including, *inter alia*, expert fees and out-of-pocket litigation expenses (depositions, court reporters, videographers, travel, copy expenses, etc.).  Because the case against Defendants involves claims of professional malpractice, expert witness testimony as to Defendant's compliance with professional standards would be necessary, and expert witness fees would have been a significant expense going forward if the Scheef & Stone Action were not settled, and could easily have run into the hundreds of thousands of dollars.  Other out-of-pocket litigation costs could have been substantial going into trial, including trial graphics, mock trial and jury consultant expenses, cost of reproduction of documents and trial exhibits, and attendance of experts at trial.  Thus, total additional out-of-pocket costs to prosecute the claims against Defendants would have almost certainly been *at least* several hundred thousand dollars due to the complex nature of the claims, the need for expert testimony, and the voluminous nature of the records involved.

### *(4)   The Complexity and Costs of Future Litigation*

34. The prosecution of the Scheef & Stone Action would undoubtedly be challenging and expensive, as discussed above. As the Court is aware, the facts and legal analysis of the Breitling scheme are extraordinarily complex. There is no question that the Scheef & Stone Action, involving claims of legal malpractice, among others, tens of millions of dollars in claimed damages, and a fraud scheme operated through a complex web of interrelated companies that spanned nearly 6 years, is extraordinarily complex, and would cause the Receivership Estate to incur substantial expense to litigate to final judgment. As stated above, additional litigation expenses incurred to try the case could have easily reached several hundred thousand dollars.

### *(5)   The Implications of the Scheef & Stone Settlement on Other Claimants*

35. The Receiver will distribute the net proceeds from the Scheef & Stone settlement to the Breitling investor claimants pursuant to the Court approved plan of distribution. Thus, the relief requested herein will further "[t]he primary purpose of the equitable receivership [which] is the marshaling of the estate's assets for the benefit of all the aggrieved investors and other creditors of the receivership entities." *SEC v. Parish*, 2010 WL 8347143, at *6 (D.S.C. Feb. 10, 2010), *modified*, 2010 WL 8347144 (D.S.C. Apr. 8, 2010) (approving settlement).

### *(6)   The Value and Merits of Any Foreclosed Parties' Potential Claims*

36. This element does not apply. The Receiver does not seek to bar or foreclose any Breitling investor or creditor from pursuing claims (if any) against Defendants.

37. Given that the Breitling investors have been put on notice of the Receivership and that the Receiver has either recognized the Breitling investors' claims or has notified the Breitling investors of their rights and opportunities to present claims in the Receivership, and that all Breitling investors whose claims are recognized by the Receiver will receive a distribution from

the Scheef & Stone Settlement, the proposed settlement represents the best opportunity to provide funds quickly to the Breitling victims and to distribute those funds in an orderly fashion without consumption of additional expenses.

### *(7)      Other Equities Attendant to the Situation*

38.     Again, the Receiver believes that he has achieved the best settlement possible with Defendants given the circumstances surrounding Defendants' limited and depleting insurance policy.  The Receiver and Litigation Counsel believe that they struck the right balance in settling the case at this time, prior to further erosion of Defendants' insurance policy and prior to full blown discovery and retention of expert witnesses, which would have increased costs for the Receiver while at the same time decreasing the potential amount of recoverable assets from Defendants.  As described above, the Receiver and Litigation Counsel believe that they have effectively recovered roughly 75% or more of what would have been left of Defendants' depleting insurance policy had the Receiver litigated the Scheef & Stone Action to trial, all without incurring further expense for the Receivership Estate.   The Receiver and Litigation Counsel therefore believe they have achieved and delivered an excellent result for the benefit of the Breitling victims.

39.     The Receiver and Litigation Counsel spent considerable time and effort to reach a settlement that is fair and equitable to the Receivership Estate and the defrauded Breitling investors.  While the Receiver and Litigation Counsel firmly believe that they could prevail in their causes of action against Defendants, Defendants vigorously deny any wrongdoing or liability, and have indicated that they believe they would successfully defend all claims against them.  Defendants also have the resources, consisting mainly of the insurance policy proceeds that are being depleted by defense costs, to defend themselves and to litigate the issues through a final trial

court judgment, and appeal if necessary, which means the litigation could take years to be resolved without a settlement.

40.     The Receiver and Litigation Counsel therefore believe that the terms of the Scheef & Stone Settlement offer the highest net benefit to the Receivership Estate, in terms of maximizing Receivership assets and minimizing the expense to obtain them.

## V.     CONCLUSION & PRAYER

41.     The Scheef & Stone Settlement represents a substantial and important recovery for the Receivership Estate and the Breitling Investors.  The amount of the recovery, the time and costs involved in pursuing litigation against Defendants, and the uncertain prospects for obtaining and then recovering on a judgment against Defendants, all weigh heavily toward approving the Scheef & Stone Settlement.

WHEREFORE, PREMISES CONSIDERED, the Receiver respectfully request this Court:

a.     Grant this Motion;

b.     Approve the Scheef & Stone  Settlement;

c.     Grant the Receiver all other relief to which he is entitled.

Dated:  December 22, 2020.

**THE TAYLOR LAW OFFICES, P.C.**

By:  */s/ Thomas L. Taylor, III*
    Thomas L, Taylor III, Receiver
    taylor@tltaylorlaw.com
    245 West 18th Street
    Houston, Texas 77008
    (713) 626-5300
    (713) 402-6154 (Facsimile)

**CASTILLO SNYDER, P.C.**

By:  */s/ Edward C. Snyder*
    Edward C. Snyder
    esnyder@casnlaw.com
    Jesse R. Castillo
    jcastillo@casnlaw.com
    700 N. St. Mary's Street, Suite 1560
    San Antonio, Texas  78205
    (210) 630-4200
    (210) 630-4210 (Facsimile)

**LITGATION COUNSEL FOR THE RECEIVER THOMAS L. TAYLOR**

## **CERTIFICATE OF SERVICE**

On December 22, 2020, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. All parties who have appeared in this proceeding will be served via ECF. Investors and other interested parties will be served and given notice of the hearing on this Motion as approved by the Court.

/s/ Edward C. Snyder
Edward C. Snyder